Allen S. BERMAN, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 80 C 2737.

United States District Court, N. D. Illinois, E. D.

Feb. 16, 1982.

Lawrence P. Bemis, Chicago, Ill., for plaintiff.

Steven A. Miller, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

This case is before us on an application for attorney's fees from counsel for the plaintiff in an action in which plaintiff successfully sought reversal of a decision of the Social Security Administration which had denied plaintiff's request for revision of his social security earnings record. On Friday, August 14, 1981, we issued a memorandum order granting summary judgment for the plaintiff. On the ensuing Monday, August 17, 1981, the clerk issued judgment pursuant to Rule 58, Fed.R.Civ.P. The August 14 order was not entered on the docket until August 17 and the August 17 judgment until September 2.

The fee application is brought pursuant to "The Equal Access to Justice Act", 28 U.S.C.A. § 2412 (West Supp. 1981) ("the Act"), which became effective October 1, 1981. To our knowledge there is only one reported decision under the Act and we confront several issues of first impression.

At the outset there are two questions of timing which we must address. Our memorandum order granting summary judgment was issued August 14, 1981, and judgment was issued by the clerk August 17. However the judgment was not entered on the docket until September 2. The Act was passed in October, 1980 and implemented according to the following provision:

Sec. 208. This title and the amendments made by this title shall take effect on October 1, 1981, and shall apply to [any civil action] which is pending on, or commenced on or after, such date. 5 U.S.C. § 504 note.[1]

Defendants contend that our decision of August 14 or issuance of judgment on August 17, was a final disposition of the case with the result that the case was not pending as of October 1. Plaintiff counters that because the time for defendant to appeal the judgment did not run until sixty days after issuance of the judgment, this case was still pending on the effective date of the Act.

In addition, though the defendant has not raised the point, the Act requires that "[a] party seeking an award of fees ... shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses..." 28 U.S.C. § 2412(d)(1)(B) (1981). Thus, if either our decision of August 14 or the clerk's issuance of judgment on August 17 qualifies as a "final judgment", then the fee application would be late and we could not consider it. *See Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652 (7th Cir., 1981). However, if the September 2 entry of the judgment on the docket qualifies as the date on which the judgment became final, then the application was timely made within the thirty day rule of the Act.

■ There is little legislative history or case law on the meaning of the word "pending." What case law there is, however, uniformly supports plaintiff's position that a case is "pending" so long as the losing party's right to appeal has not yet been exhausted or expired. *See Perzinski v. Chevron Chemical Co.*, 503 F.2d 654, 657 (7th Cir. 1974); *Williams v. State*, 62 Cal. App.3d 960, 133 Cal.Rptr. 539 (1976); *In re Estate of Stith*, 45 Ill.2d 192, 258 N.E.2d 351, 353 (1970) (and cases cited therein). We agree that until it becomes clear that the litigation will end with the district court's judgment, the action is still "pending." *See also, Buckton v. NCAA*, 436 F.Supp. 1258, 1262–63 (D.Mass.1977). Absent some statement in the legislation or its history to the contrary, we must assume that Congress meant the term "pending" to be applied consistent with its generally accepted meaning. Accordingly, we hold that because the government's 60 day period within which it could appeal had not expired on October 1, 1981, the effective date of the Act, this action was pending on that date.

As noted earlier, the Act also requires that any fee application be submitted within thirty days of final judgment in the action. Rule 58, Fed.R.Civ.P. requires that "[e]very judgment shall be set forth on a separate document." The purpose of the separate judgment requirement is to alleviate the "considerable uncertainty over what actions of the district court would constitute entry of judgment, and [the] occasional grief to litigants as a result of this uncertainty." *United States v. Indrelunas*, 411 U.S. 216, 220, 93 S.Ct. 1562, 1564, 36 L.Ed.2d 202 (1973). The Supreme Court has held that the rule "must be mechanically applied to avoid new uncertainties as to the date on which the judgment is entered." *Id.* at 221–22, 93 S.Ct. at 1564.[2]

---

1. The Act has been codified in two separate sections of the United States Code. Sections 201 and 202, the introductory sections, and section 203, dealing with fee awards in agency proceedings, are codified as part of the Administrative Procedure Act under title 5. *See* 5 U.S.C. § 504 (1980). Section 204 of the Act, dealing with fee awards in civil actions is codified as part of the Judicial Procedure Act, under title 28. *See* 28 U.S.C. § 2412 (1980). Despite this dual codification, certain parts of the Act, such as the effective date, cover the entire Act.

2. Subsequent to *Indrelunas*, in *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam), the Court held that Rule 58 could be waived by the parties if they proceeded to appeal in the absence of a Rule 58 judgment and none was ever entered. The Court held that if the parties and the court treated the opinion, as recorded on the docket, as final judgment in the case, justice would not be served by a holding that the appellate court lacked jurisdiction to issue its decision. The opinion does not affect, however, a situation where, as here, there are two separate documents (an opinion and a judgment order) and the decision is which of the two begins running

The two leading authorities on federal procedure make clear that the process of entering judgment is not completed until the judgment is recorded on the docket by the clerk:

> "Entry of judgment" presupposes, of course, the rendition of a judgment, which is a judicial act, followed by the proper notation of the judgment in the civil docket, which is a ministerial act of the clerk. 6A J. Moore, *Federal Practice* ¶ 58.05[2] (1979).

\* \* \* \* \* \*

> To be effective as a judgment it is the separate document known as a judgment that must be entered on the docket. . . . Even though the separate document exists in proper form, there is no effective judgment until it is entered in the docket. Although occasionally a court has been willing to overlook the failure to enter a judgment in the docket, this is undesirable. The requirement that a judgment be on a separate document and that it be entered in the docket should be regarded a[s] mandatory in all cases. 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2785 (1973) (footnotes omitted).

Were we to hold that the date of issuance of the judgment document, rather than the date of entry on the docket, starts the period running for notice of appeal and other post-judgment motions, given the delay which often occurs in entering the court's actions on the docket sheet, the time for filing such motions would sometimes run before the parties ever had notice of the court's judgment. The problem would be particularly acute for filing notice of appeal, since if notice is filed before the Rule 58 judgment is entered the appellate court does not have jurisdiction to decide the case. *See Furr's Cafeteria, Inc. v. NLRB*, 566 F.2d 505 (5th Cir. 1978); *Levin v. Wear-Ever Aluminum, Inc.*, 427 F.2d 847 (3d Cir. 1970); 11 Wright and Miller, *supra* § 2781 n. 8. Cf. note 2, *supra*.

■ Our decision is consistent with the opinion of the Seventh Circuit in *Brainerd v. Beal*, 498 F.2d 901 (7th Cir. 1974), where the court held that the date of entry as reflected on the docket could not be challenged by an affidavit to the effect that entry was actually made at some later date. *Id.* at 902. *Brainerd* suggests that if the docket had reflected some date other than the date on which the judgment was signed, the date of entry would be controlling. Some time after that decision the Clerk of this court changed procedures to reflect on the docket the actual date of entry as well as the date the judgment or order was issued. In the instant case, while the Rule 58 judgment was issued August 17, it was not recorded on the docket until September 2. Because the September 2 date is controlling, the application filed by the plaintiff on October 1 was timely.

The government next contends that the Act does not apply to this case asserting that the fee provision of the Social Security Act, 42 U.S.C. § 406(b)(1) (1976), is the sole authorization for fees in social security cases, and that in any event the Act does not cover civil actions to review social security decisions. We reject both contentions.

■ The first assertion is based on Section 206 of the Act, 28 U.S.C. § 2412 note, which provides that "[n]othing in section 2412(d) . . . alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States." If the Social Security Act, 42 U.S.C. § 406(b)(1), permitted plaintiff to recover fees, then it would be plaintiff's exclusive remedy. However, § 406(b)(1) only covers the awarding of fees where the party seeks reimbursement for past due benefits, and limits the award to 25% of the total judgment. This is not such a case; here, plaintiff sought, and won, the right to pay social security taxes and receive four quarters of social security coverage. There

the time from which an appeal or post-judgment motion must be taken. In that situation the holding of *Indrelunas* that Rule 58 be "me-chanically applied" and judgment effective from the date of entry on the docket is still controlling.

were no monetary benefits sought and our judgment included no award of damages or benefits on which to base a fee award under § 406(b)(1). *See Berman v. Schweiker*, No. 80 C 2737 (N.D.Ill. August 14, 1981).

The House Report indicates that the savings clause of § 206 of the instant Act does not foreclose application of the Act in this situation: "Moreover, this section is not intended to replace or supersede any existing fee shifting statutes . . ., or to alter the standards or the case law governing those Acts. It is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized." H.Rep.No.96–1418, *reprinted in* [1980] *U.S.Code & Admin.News* 4953, 4984, 4997.

■ Defendant contends that an administrative action by the Social Security Administration is not covered by the Act. At the administrative level, the Act covers only an "adversary adjudication". 5 U.S.C. § 504(a)(1), (b)(1)(C). The administrative portion of a social security proceeding does not qualify because the Social Security Administration does not take a position which is represented through counsel in those proceedings. Thus, fees may not be awarded under the Act to a social security beneficiary who prevails at the administrative level. But the Act does cover judicial review of social security administrative proceedings by a district court where the agency takes a position in the case. The conference report states,

> [t]he conference substitute defines adversary adjudication as an agency adjudication defined under the Administrative Procedures Act where the agency takes a position through representation by counsel or otherwise. It is intended that this definition precludes an award in a situation where an agency, e.g. the Social Security Administration, does not take a position in the adjudication. If, however, the agency does take a position at some point in the adjudication, the adjudication would become adversarial. Conf.Rep.No. 96–1434, *reported in* [1980] U.S.Code & Admin.News 5003, 5012.

Perhaps more to the point, the House Report states, "[t]here was much discussion whether the United States should be liable when it is a named party and represented in a civil action under the Social Security Act. The Committee decided that civil actions should be covered." H.Rep.No.96–1418 *supra* at 4991. That view was confirmed by one of the bill's supporters in a discussion on the House floor prior to final passage:

> MR. ROSTENKOWSKI. But as I read the language adopted by the Senate and the language that is presently before us, there is no exemption for social security cases in this language.

> MR. RAILSBACK. All right, if the gentleman would yield. I think the gentleman is wrong . . . [I]n the conference they adopted the language of the Committee on the Judiciary bill which I say to my friend from Illinois would rather drastically *limit recovery only to actions where they went into the Federal district court.* In other words, it would not apply to the administrative proceedings. Cong. Rec. H–10220, 96th Cong., 2d Sess. (October 1, 1980) (emphasis supplied).

That position was repeated by several other speakers. *See generally id.* at 10218–10225. In this action the agency is the named defendant, an active participant in contested litigation, and takes a position through counsel. Therefore this action is covered by the Act.

We come now to the standard for awarding fees under the Act. A "prevailing party" in any civil action against the United States is entitled to fees "unless the Court finds the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Where, as here, the nongovernmental party clearly "prevailed", the burden is on the government to demonstrate that, although it lost the case, its position was "substantially justified." H.Rep.No.96–1418, *supra* at 5011. *See Alspach v. District Director of Internal Revenue*, 527 F.Supp. 225, 229 (D.Md.1981).

The standard created by this statute is a new one, not in line with either the common law exceptions to the American rule restricting the award of attorneys' fees, or

other statutory standards allowing fee awards in certain cases against the United States. It was intended to serve as a "middle ground" between an automatic award of fees to a successful party and permitting fees only where the government's position was arbitrary or frivolous. H.Rep.No.96–1418, *supra* at 4993. The standard was elucidated at some length by the committee report:

The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and in fact, no award will be made...

Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.

The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing. Furthermore, the Government should not be held liable where "special circumstances would make an award unjust." This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. H.Rep.No.96–1418, *supra* at 4989–4990.

*See also Alspach*, 527 F.Supp. at 228–229 (holding that the Act focuses on the government's position in the litigation, not the underlying action by the agency being challenged). The standard falls in between the common law "bad faith" exception and an automatic award of attorney's fees to prevailing parties.

■ In the instant case we find the government's position was not substantially justified. Plaintiff was successful on a motion for summary judgment and the government's position was found to be erroneous as a matter of law. As noted in our decision of August 14, even the Administrative Law Judge, who ruled against the plaintiff, recognized that his decision placed plaintiff in a "never-never land" and created a "Catch-22" with respect to plaintiff's tax status. There was nothing novel or innovative in the government's position; it argued that the plaintiff should be classified as a contractual service employee despite the fact that no such category existed at the time plaintiff rendered the services for which he was compensated. For the reasons more fully stated in our original opinion, *see Berman v. Schweiker, supra*, slip op. at 5–10, we find the factual and legal basis for defendant's position was not "substantially justified". Accordingly, an award of attorney's fees is appropriate in this case.

■ Defendant contests the inclusion of $855.50 in the fee application for the cost of services provided by a law student. The cases are split on whether a law student's services are recoverable under analogous statutes. *Compare Bolden v. Pennsylvania State Police*, 491 F.Supp. 958 (E.D.Pa.1980) (recovery allowed under 42 U.S.C. § 1988 (1976)), *with Scheriff v. Beck*, 452 F.Supp. 1254 (D.Colo.1978) (recovery denied under same statute). The Act authorizes an award of "reasonable fees and expenses of attorneys." 28 U.S.C. § 2412(b).

The application states that counsel's firm actually paid the second year law student who worked on this case $14.00 per hour for his services. We believe these payments constitute reasonable expenses of counsel. Moreover, denying compensation for a student law clerk would be counter-productive. As plaintiff's counsel points out, law firms frequently employ student law clerks to perform tasks under attorney supervision as one way of controlling the spiralling costs of litigation. Excluding compensation for fees incurred by employing student law clerks will force attorneys to handle the

entire case themselves, achieving the same results but at a much higher cost.

Finally, the government argues that plaintiff's attorney accepted appointment as counsel in this case on the explicit understanding that he would not be entitled to legal fees. The court's letter of appointment, which the government points to, merely stated that because this case would create no fund recovery, no fees would be available under the statutes that existed at the time. (See October 20, 1980 letter from Judge Marshall to Lawrence P. Bemis, Esq.). This letter was not meant, and should not be read, to preclude an award of fees under a subsequently effective statute intended by Congress to apply to cases such as this one.

The government does not otherwise contest the reasonableness of the time claimed or the rate charged by counsel and we believe they are both reasonable and appropriate. We therefore find plaintiff's counsel entitled to judgment for fees and expenses in this case in the amount of $2,310.50. Judgment will enter in favor of Lawrence P. Bemis and against the United States of America in the amount of $2,310.50 and costs.