Susan F. LONNING

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services.

Civ. A. No. 82–1952.

United States District Court, E.D. Pennsylvania.

Aug. 4, 1983.

Michael J. Campbell, Delaware County Legal Assistance Ass'n, Chester, Pa., for plaintiff.

Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

By order dated March 14, 1983, I adopted the Report and Recommendation of Magistrate Edwin E. Naythons, reinstating plaintiff's Supplemental Security Income (SSI) disability benefits. Plaintiff's counsel now seeks attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (Supp. V 1981). For the reasons set forth below, the fee petition will be granted.

## I. BACKGROUND

Susan F. Lonning ("Lonning") is a twenty-seven year old controlled epileptic who is mentally retarded. In September of 1976, she was deemed disabled within the meaning of Title XVI of the Social Security Act and began receiving SSI benefits. In June of 1980, the Social Security Administration's Office of Disability Operations notified Lonning that they determined that her disability had ceased as of May of that year. Her benefits were immediately terminated. A hearing was requested and the Administrative Law Judge (ALJ) agreed that Lonning was no longer disabled. Review was denied by the Appeals Council. Thereafter, Lonning brought suit. Upon reviewing Magistrate Naythons' report and recommendation, this court found insufficient evidence of improvement to warrant the termination of benefits.

Plaintiff's counsel, Michael J. Campbell, Esquire, ("Campbell") asserts entitlement to $1,012.50 plus a cost of living increase under the EAJA. In support of his fee petition, Campbell argues that the government's position was not "substantially justified." The government opposes an award of attorney's fees, contending that the EAJA should not be applied to claims for SSI benefits under Title XVI. In the alternative, the government argues that they were substantially justified in terminating Lonning's benefits.

## II. DISCUSSION

### A. The EAJA and the Social Security Act

The EAJA is a limited statutory departure from the traditional "American Rule," which places upon each party the burden of paying their own attorney's fees. It allows a prevailing private party to recover fees against the government when the latter's position was not "substantially justified." The statute provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Pub.L. No. 96–481, 94 Stat. 2327, Title II § 204(a), 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981). The purpose of this experimental[1] statute was to " 'remove an obstacle to contesting unreasonable governmental action through litigation' posed by the expense

---

1. The EAJA, which became effective on October 1, 1981, has a "sunset" provision. Its built-in repeal will be triggered on October 1, 1984.

However, it will continue to remain in effect for all actions brought before the date of repeal.

involved in securing the vindication of a party's rights in the courts." *Dougherty v. Lehman,* 711 F.2d 555, at 562 (3d Cir.1983) (citing *Goldhaber v. Foley,* 698 F.2d 193, 195 (3d Cir.1983)). The substantial justification element ensures that fees are only awarded where the United States' action was unreasonable.

▆ The government argues that the EAJA was not intended to and should not be applied to this kind of Social Security case. However, its reasoning is vague at best. The government concedes that the legislative history of the statute indicates that the United States should be liable when it is "a named party and represented in a civil action under the Social Security Act." Governments' Response to the Fee Petition at 3–4. (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953 at 4991). Noting that the United States is not a named party herein, the government questions whether Congress contemplated the statute to apply where an agency or official, rather than the United States, is named. The suggestion that the EAJA should not apply where an agency or official is the named party ignores the statutory language. The definitional section of the Act states that; " 'United States' includes any agency and any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(d)(2)(C). Thus, by its own terms, the EAJA applies to suits brought by or against an agency or official. Moreover, it is unlikely that any case challenging the action of an administrative agency would be brought against the United States, rather than against the official or agency itself. To require the United States to be a named party before utilizing the EAJA would preclude its appli-

cation in the very cases for which it was enacted.

The government appears to argue that since there is no provision within the Social Security Act for an attorney's fee award in SSI cases, the EAJA should not be applied to these cases. This argument belies the government's position. The Third Circuit noted that Congress intended the EAJA "not to affect cases where fees already could be awarded, but instead to make fee awards possible in additional cases when section 2412(d)(1)(A)'s requirements are met." *Natural Resources Defense Council v. United States Environmental Protection Agency,* 703 F.2d 700 at 705. The court stated that "Congress intended the EAJA to expand the potential for fee awards under certain circumstances, not to freeze the absence of counsel fee provisions in existing statutes." *Id.* The legislative history of the statute states:

> this section is not intended to replace or supercede any existing fee-shifting statutes such as the Freedom of Information Act, the Civil Rights Acts, and the Voting Rights Act in which Congress has indicated a specific intent to encourage vigorous enforcement, or to alter the standards or the case law governing those Acts. It is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. at 18, *reprinted in* 1980 U.S.Code Cong. & Ad-min.News at 4997 (emphasis added) (as quoted in *National Resources Defense Council,* 703 F.2d at 705). Thus, this is precisely the kind of case which Congress envisioned when enacting the EAJA—one where a fee award was not otherwise obtainable.[2]

---

**2.** Courts have even applied the EAJA where attorney's fees are conditionally authorized, but not applicable in a given case. For example, in *Natural Resources Defense Council,* suit was brought pursuant to the Clean Water Act, which authorized attorney's fees in cases under section 505(a) of that Act. The fact that the statute was silent with regard to suits brought pursuant to section 509(b)(1) did not preclude an award under the EAJA. 703 F.2d at 705. In

the social security context, many courts have had to grapple with section 406(b)(1), 42 U.S.C. § 406(b)(1), which limits attorney's fees to 25% of the judgment in situations where the claimant seeks reimbursement for past due benefits. This section purports to be the exclusive attorney's fee provision for that type of claim. The courts to address the issue have held that the existence of section 406(b)(1) does not preclude an attorney's fee award under the

Finally, the government argues that since this suit was filed by Delaware County Legal Assistance Association, a public interest law corporation, the financial hardship which the EAJA seeks to prevent is not present here. In addition, the government contends that the Act should not be abused, fearing an award of attorney's fees in every case where the denial of benefits is reversed. The EAJA does not distinguish between awards for private attorneys and public interest law associations. Arguably, the latter is more in need of renumeration than the former. As for the government's fear of an award in every case, the limit on awards is built into the "substantial justification" standard. In short, the government has cited no coherent or persuasive reason for not applying the EAJA to cases brought under the Social Security Act, in general, or under Title XVI, in particular.[3]

### B. *Substantial Justification*

■ Under the EAJA, although a prevailing party may be awarded attorney's fees only if the government's position was not "substantially justified," the United States has the burden of proving this justification. H.R.Rep. No. 1418, 96th Cong. 2d Sess., at 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 4989 [hereinafter House Report]. *See also Dougherty,* at 561; *Natural Resources Defense Council,* 703 F.2d at 711; *Moholland v. Schweiker,* 546 F.Supp. 383, 386 (D.N.H.1982).

For purposes of the EAJA, the government's "position" has been defined as the "agency action which made it necessary for the party to file suit."[4] *Natural Resources Defense Council,* 703 F.2d at 707. Since the government does not contest Lonning's status as a prevailing party, I must determine only whether the United States was substantially justified in terminating her benefits.

Substantial justification is a vague phrase. However, the legislative history does shed some light:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made.
>
> . . . .
>
> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case.

House Report at 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 4989–90. The Third Circuit has described the standard as a "middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous." *Dougherty,*

---

EAJA when a different type of claim is presented. *See e.g., Watkins v. Harris, Secretary of Health, Education and Welfare,* 566 F.Supp. 493, 497 (E.D.Pa.1983); *Ocasio v. Schweiker, Secretary of Health and Human Services,* 540 F. Supp. 1320, 1322 (S.D.N.Y.1982); *Wolverton v. Schweiker, Secretary of Health and Human Services,* 533 F.Supp. 420, 422–23 (D.Idaho 1982); *Berman v. Schweiker, Secretary of Health and Human Services,* 531 F.Supp. 1149, 1152–53 (N.D.Ill.1982).

**3.** The government's position with respect to the EAJA's application to social security cases is curious. From their brief, it is not clear why they object. Moreover, their rather feeble arguments are contrary to the clear import of the language and history of the statute. In addition, many courts have analyzed fee petitions under the EAJA in the social security context. *See e.g., Watkins v. Harris, Secretary of Health, Education and Welfare,* No. 79–3173

(E.D.Pa. May 9, 1983); *Ulrich v. Schweiker, Secretary of Health and Human Services,* 548 F.Supp. 63 (D.Idaho 1982); *Moholland v. Schweiker, Secretary of Health and Human Services,* 546 F.Supp. 383 (D.N.H.1982); *Shumate v. Harris, Secretary of Health, Education and Welfare,* 544 F.Supp. 779 (W.D.N.C.1982); *Ocasio v. Schweiker, Secretary of Health and Human Services,* 540 F.Supp. 1320 (S.D.N.Y. 1982); *Wolverton v. Schweiker, Secretary of Health and Human Services,* 533 F.Supp. 420 (D.Idaho 1982); *Berman v. Schweiker, Secretary of Health and Human Services,* 531 F.Supp. 1149 (N.D.Ill.1982).

**4.** The EAJA applies only to attorney's fees incurred for services rendered before the court, *see* 28 U.S.C. § 2412(d)(I)(A), and not for representation before an administrative agency. *See e.g., Watkins v. Harris,* 566 F.Supp. 493, 497–498 (E.D.Pa.1983).

at 563 (citing *Natural Resources Defense Council,* 703 F.2d at 708, 711).

In *Dougherty,* the court attempted to clarify the definition of substantial justification, establishing a tripartite test based upon the legislative history's concept of a reasonable basis in fact and law. Under this test, the government must:

First, show that there is a reasonable basis in truth for the facts alleged in the pleadings. If no such basis for the government's factual allegations exist, then the government's position may well be held not to be "substantially justified."

Second, the government must show that there exists a reasonable basis in law for the theory which it propounds. This is not to say that the government need demonstrate that there is a substantial probability that the legal theory advanced by it will succeed.

Finally, the government must show that the facts alleged will reasonably support the legal theory advanced. Thus, having met these requirements, if the government's legal theory, as applied to the facts, reasonably supports the Secretary's position, even though the government may not have ultimately prevailed, then the government will have proven that the "position of the United States was substantially justified."

*Dougherty,* at 564 (citations omitted). In order to apply this standard, some factual background is required.

Lonning is an epileptic whose seizures are completely controlled by the medication dilantin. She is mentally retarded, having an overall I.Q. of approximately 74. After graduating from a special education class at Chichester High School in 1974, Lonning entered Elwyn Institute for. diagnostic and vocational training. She did not have a great deal of success, showing aptitude only for very repetitive simple tasks such as housekeeping, laundry and kitchen work. During the summer of 1976, Lonning attempted to put to use any skills garnered at Elwyn. She was hired to do kitchen work in the Children's Cottage of the Fair Acres Nursing Home. Six weeks later she was terminated for being too slow and unable to follow instructions. Lonning's only other employment consisted of piecework in a sheltered workshop. Although she worked there from 1977 through 1979, she earned on the average of $40.00 every two weeks, an amount insufficient to be considered "substantial gainful activity." *See* 20 C.F.R. § 416.974(b)(2)(3) (1982).

After leaving the workshop, Lonning returned to Elwyn and entered their Extended Evaluation/Training Program. Although she seemed to perform a little better, her skills were still far from good. As Joseph F. Lewis, the Coordinator of the Program, stated in a progress report:

While Susan displays promising skills, *she currently lacks the social maturity or ability to handle an abundancy of tasks which would be required within a competitive employment situation.* Her academic functioning is fair, but she has problems processing new information or retaining old information. She displays the need to develop those work habits characteristic of a competitive environment.

(emphasis added) Tr. 143. This report was dated June 19, 1980 and it was at approximately this point in her vocational training that Lonning's benefits were terminated. At the behest of the Social Security Administration, Lonning was examined by psychologist, Richard G. Irvins, Ph.D. on May 23, 1980. While at Elwyn, Lonning was also examined by a physician, Dr. Douglas Wasley. The results of these two examinations, particularly the report of Dr. Irvins, were crucial factors in the decision to terminate Lonning's disability benefits.

In addition to her dubious vocational skills, Lonning has two major deficiencies which hamper her employability. She has absolutely no concept of time and is unable to handle her finances. For example, at her hearing Lonning was not certain if it would take "a month or a years [sic]" to finish a given vocational course. Tr. at 44. She testified that she worked at the sheltered workshop for five (5) years, instead of two, Tr. at 42 and stated that she was tutored about telling time, Tr. at 47. With

respect to money, Lonning is unable to determine how much change to expect when tendering more than the exact amount.

■ The Social Security Administration's decision to terminate Lonning's benefits was based upon the reports of Dr. Irvins and Dr. Wasley, as well as her vocational training at Elwyn. Analysis of these factors leads to the conclusion that the government has failed to prove the first prong of the test set forth in *Dougherty*. That is, there was no reasonable basis in truth for the government finding Lonning no longer disabled and able to procure substantial gainful activity.[5]

The report of Dr. Irvins was apparently considered to be the most persuasive factor. It detailed various psychological tests and revealed that her scores were basically the same as when the tests were administered in 1974. Yet, with no analysis Dr. Irvins stated; "[p]resently the client is quite capable of performing routine repetitive tasks and is probably able to perform more complex tasks with specific training. The client appeared to be able to manage her own affairs at this time." Tr. 142. The report did not explain why, given similar scores on the intelligence tests, Lonning could do something then that she could not do before—engage in substantial gainful employment. Dr. Irvins apparently did not consider her inability to perform satisfactorily kitchen work at the Fair Acres Nursing Home. Nor did the report indicate that she was capable of competitive employment. Moreover, given Lonning's problems with money and time, Dr. Irvins' conclusion that she was able to handle her own affairs was unsupported by any test result or other finding.

The government argues that the real issue is the weight to be accorded Dr. Irvins' report. However, a credibility determination will not supply substantial justification

in this case. Dr. Irvins' conclusions are directly contrary to the remainder of the record evidence. Lonning's neurologist, Dr. Bruce Bogdanoff, M.D., opined that she was disabled, Tr. at 144. At the time of Dr. Irvins' examination, the vocational experts at Elwyn still found her deficient in skills necessary for "competitive employment." In any event, the psychologist's report did not reach the ultimate issue. Assuming the correctness of Dr. Irvins' conclusions, the report did not indicate that Lonning was capable of competitive employment or that there were any extant positions which she could competently hold. Without some corroborating, occupation related evidence to fill in the gaps, Dr. Irvins' report provides no support for the government's position.

Nor does Dr. Wasley's report add the necessary corroboration. He examined Lonning in connection with her epilepsy and concluded that her seizures were controlled with medication. However, the record shows that it is the mental retardation, rather than the epilepsy, which renders Lonning unable to work and therefore disabled. Dr. Wasley noted her learning difficulty in his report, Tr. 138 and did not purport to address the issue of her employability or disability.

The final factor relied upon by the government is Lonning's vocational training. It is uncontested that as of 1976, Lonning was not even competent for kitchen work. Her piecework at the sheltered workshop, as noted earlier, did not rise to the level of "substantial gainful activity" under 20 C.F.R. § 416.974(b)(2)(3) (1982). The only thing remaining is her second bout of vocational training at Elwyn. Although her performance had improved somewhat, at the time of her termination, she was still lacking the skills necessary for competitive employment.

---

5. In a sense, this is a mixed question of law and fact. Given a truthful or correct factual determination, the government would have a reasonable basis in law to determine that Lonning is no longer disabled, thus satisfying *Dougherty's* second prong. However, the factual underpinnings relied upon by the government are insufficient. Moreover, the third prong of *Dougherty* is similarly lacking. The facts which exist do not support a legal finding of no disability. *See Dougherty*, at 564. Thus, my resolution could rest upon failure to prove either the first or the third prong.

None of the factors relied upon by the government provide "a reasonable basis in truth" for the termination of her benefits. Nor do the facts support a determination that Lonning was no longer disabled. There was absolutely no evidence that Lonning was able to seek competitive employment or engage in substantial gainful activity. Therefore, applying the test set forth in *Dougherty,* I conclude that the decision to terminate Lonning's disability benefits was not substantially justified. Therefore, an award of attorney's fees is appropriate under the EAJA.

### C. *The Amount of the Award*

The fee provision of the EAJA allows recovery of:

> reasonable attorney fees ... except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A) (Supp. V 1981). Campbell seeks the statutory maximum of $75 per hour plus a cost of living increase from 1982 to the present. His break down of attorney time is as follows:

| | |
|---|---|
| Preparation of the Complaint | 1 hour |
| Research and Writing of the Summary Judgment Motion and Memorandum of Law | 10½ hours |
| Research on Attorney's Fee Issue | 1 hour |
| Drafting of Fee Petition and Memorandum of Law | 1 hour |
| Total | 13½ hours |

13½ hours × $75 per hour = $1,012.50

The government does not object to the amount or means of calculation of the fee. ▮ Campbell has pointed to his credentials and experience in handling Social Security disability cases, both of which allowed him to spend a minimum number of hours on this case. I find that his experience and credentials warrant awarding the maximum fee allowable in lieu of special circumstances—$75 per hour. Definite information with respect to the allocation of time has been provided in accordance with this Circuit's decision in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1973). I find the number of hours spent on this case to be reasonable. Therefore, I shall award attorney's fees in the amount of $1,012.50.

Campbell also seeks a cost of living increase for the period of 1982 to the present. The EAJA, quoted above, does allow the court to add a cost of living increase. However, Campbell has failed to brief his entitlement to this increase or indicate how it should be calculated in light of the relevant economic fluctuations. Nor has he specified from what point in 1982 this increase should accrue. Given the lack of specificity of this request, it shall be denied.