MASSACHUSETTS UNION OF PUBLIC
HOUSING TENANTS, et al.,
Plaintiffs,

v.

Samuel R. PIERCE, et al., Defendants.

Civ. A. No. 78–1895.

United States District Court,
District of Columbia.

Jan. 17, 1984.

Steven Ferrey, Boston, Mass., and Jonathan Lash, Portland, Me., for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., and Sheila Lieber and Surell Brady, Washington, D.C., for defendants.

GEORGE L. HART, Jr., District Judge.

## I. FACTUAL BACKGROUND

### A. Earlier Litigation

In September of 1975, HUD proposed a regulation to require the use of certain

HUD funds for the conversion of public housing project utility systems to individual or check-metered service. *See* 40 Fed. Reg. 44159 (September 25, 1975). Once a conversion takes place, individual tenants are responsible for the utility bills. In deciding whether to convert the meters, HUD required that each local public housing authority ("PHA") conduct a benefit/cost analysis which assumed that conversion to an individual meter will automatically result in consumption reductions of 25–35% of heating use. This presumption was embodied in 24 C.F.R. 865.404.

Plaintiff Massachusetts Union and other parties participated in the commenting process for the proposed regulation. After an extensive comment and review procedure, HUD promulgated the regulation and therefore required the PHAs to undertake the benefit/cost analysis within 18 months.

Plaintiffs disagreed with the promulgation of the regulation and attempted through both a formal rulemaking petition and informal discussions with HUD officials to bring their opposition and concerns to the attention of HUD so that remedial measures could be taken. Both the informal and formal procedures were not successful. Having exhausted their administrative remedies, on October 11, 1978, plaintiffs filed suit against HUD and the National Capital Housing Authority in the District of Columbia.

Plaintiffs alleged that the Part 865 regulation was promulgated in violation of the National Environmental Policy Act (NEPA) and that there was no factual or rational basis for the assumption of a 25–35% saving of heating energy.[1] On January 25, 1980, the Court granted summary judgment in favor of HUD and dismissed the complaint.

Plaintiffs appealed that decision to the District of Columbia Circuit Court of Appeals. After reviewing the record, the D.C. Circuit reversed the decision of this Court and held that HUD had not demonstrated a factual or rational basis for the 25–35% presumption. *Massachusetts Union of Public Housing Tenants v. Landrieu*, 656 F.2d 899 (D.C.Cir.1981). In addition, the Court of Appeals remanded the case to this Court in order to allow HUD to provide additional supplementation of the administrative record. *Id.* On June 3, 1981, this Court remanded the case to HUD and retained jurisdiction.

In September of 1981, plaintiffs moved for a specification of the remand to enjoin further meter conversions pending HUD's demonstration of a factual basis for the Part 865 presumption. On March 3, 1982, this Court granted the motion and ordered HUD to direct no monies for conversion of utility meter systems for space heating fuels. Twelve days later, the defendants filed a Motion for Clarification or Modification of the Court's order. The Court denied defendants' motion on June 7, 1982. The Court also denied a Motion for Contempt filed by plaintiffs in which they alleged that HUD was not in compliance with the Court's order of March 3, 1982. *See* Order dated June 16, 1982.

After further discovery, the Court considered the parties' cross-motions for summary judgment. On March 11, 1983, the Court granted plaintiffs' motion for summary judgment and entered an order on May 20, 1983. This order directed that HUD not expend any federal monies nor allow the expenditure of any monies by PHAs for the conversion of utility meters pursuant to the Part 865 assumption. In addition, the Court ordered HUD to notify all PHAs that any such conversions "authorized or in progress on or after March 3, 1982 are illegal ..." and that PHAs were prohibited from "retail charging of tenants for utility usage or the surcharging of tenants for excess utility consumption...." Finally, the Court ordered HUD to notify all HUD area and regional offices of the order, and to cause those offices to inform the PHAs of the order's effect on their

---

1. After extensive informal discussion among plaintiffs and HUD officials, HUD made certain revisions to the Part 865 Regulation to include alternative conservation measures. Plaintiffs were satisfied with the changes made and voluntarily ceased the prosecution of claims under NEPA.

operations. On August 8, 1983, the Court clarified its May 20th order as being restricted to conversions specifically based on 24 C.F.R. § 865.404.

### B. Recent Litigation

After the entry of final judgment on August 8, 1983, plaintiffs filed three motions: a motion requesting leave to depose a HUD official, a motion to compel answers to post-judgment interrogatories, and a motion for attorney's fees and expenses. The motion for attorney's fees was filed on November 2, 1983, which was 86 days after the entry of final judgment. The issue before the Court today is whether the plaintiffs are entitled to the attorney's fees they have requested.[2]

## II. ENTITLEMENT TO FEES

Plaintiffs have filed a motion for attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. While under the "American Rule", prevailing litigants are not ordinarily entitled to collect attorneys' fees from the loser, *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), the EAJA authorizes attorneys' fees against the United States under certain circumstances. First, a court may assess fees and expenses against the government to the same extent that a private party would be liable for the same pursuant to common law or statute. 28 U.S.C. § 2412(b); *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 350 (D.D.C.1982). Additionally, the act provides that attorneys' fees shall be awarded against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

### A. Timeliness

■■ Section 2412(b), that provision of the EAJA allowing for fees as would exist under common law, contains no explicit time limit for filing an application for fees. In the absence of a specific time restriction, a request is timely if filed within a reasonable period after entry of judgment and if it does not unfairly surprise or prejudice the affected party. *McQuiston v. Marsh,* 707 F.2d 1082, 1084 (9th Cir.1983), *citing White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 454, 107 S.Ct. 1162, 1167, 71 L.Ed.2d 325 (1982); *Gordon v. Heimann,* 715 F.2d 531, 539 (11th Cir.1983). The defendants in this case do not dispute the timeliness of the motion under subsection (b) and the Court does not find anything in the record to support a claim of unfair surprise or prejudice. In addition, the time period of 86 days after the entry of judgment does not appear unreasonable given the absence of a specific filing limitation. As such, the Court concludes that plaintiffs' motion under 28 U.S.C. § 2412(b) is timely.

■ Subsection (d) of the EAJA provides that "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses...." 28 U.S.C. § 2412(d)(1)(B). Plaintiffs filed the fee application in this case on November 2, 1983, which was 86 days after the entry of final judgment. Plaintiffs claim that since Rule 4 of the Federal Rules of Appellate Procedure allows sixty days to appeal this Court's decision, the thirty day period in the EAJA does not expire until 90 days after entry of the judgment in the District Court. The Court disagrees.

We must begin with the well settled principle that the starting point for interpreting a statute is the language of the statute itself. Absent an indication to the contrary in the legislative history, the wording of the statute should be given its plain, clear and common meaning. *Consumer Product Safety Commission v. GTE Sylvania,*

---

**2.** On October 19, 1983, the Court granted plaintiffs' motion for leave to depose a HUD official in the interest of ensuring compliance with its order. Upon motion by HUD for reconsideration of that decision, the Court vacated its previous order and ordered that no further discovery would take place. *See* Orders dated December 23, 1983. The Court found that the plaintiffs had failed to present any *prima facie* evidence of HUD's non-compliance with the Court orders. *Id.*

*Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *American Trucking Ass'ns, Inc. v. United States,* 602 F.2d 444, 449–50 (D.C.Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979); *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 350 (D.D.C.1982). The EAJA contains no definition of the phrase "final judgment".

In *McQuiston v. Marsh,* 707 F.2d 1082 (9th Cir.1983), a fee application was filed three months after the District Court had dismissed the complaint. The Court held:

> We reject McQuiston's contention that the 30-day requirement of subsection (d) means that an application must be filed within 30 days of the expiration of the time to appeal or within 30 days of the terminating action in the court of last resort.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Rather, 'final judgment' should be defined by its common usage in contexts such as 28 U.S.C. § 1291, Fed.R.App.P. 4(a) and Fed.R.Civ.P. 54. Therefore, a request ... is untimely if filed more than 30 days after the District Court has entered judgment.

*Id.* at 1085. The plaintiffs' fee application in this case was clearly filed more than 30 days beyond the entry of judgment.

It has been recognized that "the terms of [the U.S.'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The United States Court of Appeals for the District of Columbia Circuit, just recently held that the thirty day requirement of subsection (d) should be strictly construed, and that the time limit is jurisdictional. In *Action on Smoking and Health v. Civil Aeronautics Board,* 724 F.2d 211 at 225 (D.C.Cir.1984), the D.C. Circuit interpreted § 2412(d) and found that a supplemental application for fees was untimely because it was filed 42 days after the *entry* of judgment. The Court noted:

> The thirty day time limitation contained in EAJA is not simply a statute of limitations. It is a jurisdictional prerequisite

to governmental liability. ASH's failure to file in a timely fashion deprives this court of subject matter jurisdiction to award fees.

*Id.* In addition, the Court of Appeals noted, as we do, that the legislative history supports this strict construction:

> The statute uses the mandatory "shall." The House Conference Report accompanying the Act stated that the bill "*requires* a party seeking an award of fees and other expenses to submit the application for them within thirty days of final judgment." The House Report noted that under the bill, "a party seeking an award of fees *must* apply to the court within 30 days of final judgment."

*Id.* at 225 (footnotes omitted); *See also* H.R.Rep. No. 1434, 96th Cong., 2d Sess. 26 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 5003, 5015; H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4997. Because plaintiffs did not file within that time period, the Court has no jurisdiction to award fees under subsection (d).

Plaintiffs have erroneously relied upon *Berman v. Schweicker,* 531 F.Supp. 1149 (N.D.Ill.1982), *aff'd,* 713 F.2d 1290 (7th Cir. 1983). It is clear that *Berman* supports the Court's conclusion in the case at bar. In *Berman,* on August 14, 1981, the Court issued a memorandum order granting summary judgment for plaintiff. On August 17th, the clerk issued judgment pursuant to Fed.R.Civ.P. 58. This judgment was entered on the case docket on September 2, 1981. Plaintiff filed a fee application on October 1, 1981. The Court specifically noted:

> ... if either our decision of August 14 or the clerk's issuance of judgment on August 17 qualifies as a "final judgment", then the fee application would be late and we could not consider it.... However, if the September 2 entry of the judgment on the docket qualifies as the date on which the judgment became final, then the application was timely made within the thirty day rule of the Act.

*Berman,* 531 F.Supp. at 1151. After discussing the separate issue of whether the case was "pending" as of October 1, 1981 [3] and after ruling that final judgment had been entered on September 2, 1981, the Court held that the application filed by the plaintiff on October 1, 1981 was timely. *Id.* at 1152.[4]

Upon consideration of the authorities presented to the Court through filed memoranda and oral argument on this issue, and the Court's own independent research, the Court concludes that plaintiffs' motion for attorneys' fees under § 2412(d) of the EAJA is untimely. The Court, therefore, has no jurisdiction to award fees under this section.[5]

### B. Common Law Bad Faith

Given this Court's ruling that plaintiffs' request under subsection (d) was untimely, the only issue remaining is whether the plaintiffs are entitled to fees and expenses under 28 U.S.C. § 2412(b). That section provides that the "United States shall be liable for such fees and expenses to the same extent that any party would be liable under the common law ..." 28 U.S.C. § 2412(b). Plaintiffs rely on the theory of common law bad faith.

■■■ A court may award attorneys' fees if one party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Foster v. Tourtellotte,* 704 F.2d 1109, 1111 (9th Cir.1983), *quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Roadway Express v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Cinciarelli v. Reagan,* 556 F.Supp. 99, 100 (D.D.C.1983); *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 180 (D.C. Cir.1980) (per curiam). Bad faith may be found either in the action that led to the lawsuit or in the conduct of the litigation. *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); *Lipsig,* 663 F.2d at 182.

■■■ Bad faith, however, does not include the exhibition by a party of "unusual tenacity and at times hostility in the long course of their dealings...." *Impro Products, Inc. v. Block,* 569 F.Supp. 1389, 1394 (D.D. C.1983). Indeed, the award of attorneys' fees is punitive, and the penalty can be imposed "only in exceptional cases and for dominating reasons of justice." *United States v. Standard Oil Co. of Calif.,* 603 F.2d 100, 103 (9th Cir.1979); *accord, Cordeco Development Co. v. Vasquez,* 539 F.2d 256, 263 (1st Cir.1976). Because bad faith awards of attorneys' fees are excep-

---

**3.** The EAJA only applies to those civil actions which are "pending on, or commenced on or after" October 1, 1981. 5 U.S.C. § 504 note. Plaintiff has cited several cases construing the word "pending" as authority for interpretation of the word "final judgment". The Court does not find this authority persuasive. The two issues are different and have independent concerns surrounding them. Plaintiffs' argument that the two phrases are similar in meaning is contradicted by the findings in their own cited cases. For example, in *Berman,* the court found that the case was "pending" on October 1, 1981, but found that final judgment in the case had been entered on September 2, 1981. In sum, most of plaintiffs' cases do not specifically address the issue of the thirty day limitation under subsection (d), but instead address the issue of when a case is "pending". As such, they are not authoritative. *See e.g. Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board,* 679 F.2d 64 (5th Cir.1982); *Photo Data,* 533 F.Supp. at 351; Plaintiffs' Reply Brief at p. 5, n. 2; *Mendoza v. Blum,* 560 F.Supp. 284 (S.D.N.Y. 1983).

**4.** Plaintiffs have pointed to one case which supports their contention. In *McDonald v. Schweiker,* 551 F.Supp. 327 (N.D.Ind.1982), the Court found that the thirty day requirement meant "that an application must be filed within thirty days of the expiration of the time to appeal or within thirty days of the terminating action in the court of last resort". *Id.* at 330. Because *McDonald* was rejected by the Ninth Circuit in *McQuiston v. Marsh, supra,* and because of the weight of authority against such a holding, including a ruling from our own Court of Appeals, we reject the holding in *McDonald.*

**5.** The Court also wishes to note that under the EAJA, plaintiffs were required to submit an itemized statement of fees and hours requested within the thirty day limit. 28 U.S.C. § 2412(d). This was not done in this case. Because the Court determines that the application was untimely, it is not necessary to reach the issue of whether the absence of such documentation would be fatal to a plaintiff's request for fees.

**1504**

tions to the normal rule that litigants bear their own costs, "[t]he standards for bad faith are particularly stringent...." *Aero Corp. v. Department of the Navy,* 558 F.Supp. 404, 418 (D.D.C.1983); *Lipsig,* 663 F.2d at 180. A party "should not be penalized for merely defending ... a lawsuit," *F.D. Rich,* 417 U.S. at 129, 94 S.Ct. at 2165, and "an award is not justified merely because the court found against a party on the facts." *Lipsig,* 663 F.2d at 181 n. 21; *Aero,* 558 F.Supp. at 428.

■ Upon a full review of the record in this case, the Court cannot conclude that the defendants' actions in this case rose to a level that would constitute "bad faith."

Plaintiffs point to the Court's orders of March 3, 1982 and May 20, 1983, as recognition by the Court of HUD's "bad faith." Plaintiffs' Memorandum at p. 27. There is no evidence that these orders were meant to infer bad faith on the part of HUD. These orders are prime examples of a court finding against a party on the facts, and are *not* examples of a recognition of bad faith.

Plaintiffs also contend that HUD "groundlessly prolonged" the litigation, "extending dramatically the period of th[is] litigation, the volume of paper filed and the costs to plaintiffs." Plaintiffs' Memorandum at p. 29. Once again, the record does not reveal such actions by HUD. HUD filed only six motions in this case, not including motions for extensions of time. Of those six motions, this Court granted three. In addition, the Court finds no evidence of purposeful prolonging of the litigation. Plaintiffs contend that HUD used delaying tactics in not providing further supplementation of the administrative record. On June 16, 1982, this Court ordered HUD to provide such supplementation. After seeking additional time to respond, the federal defendants stated that they had no additional supplementation. This is hardly a "maneuver" to protract litigation. It would have been in the best interests of the defendants to submit such information if it

existed. There is no evidence to support an inference of bad faith responding by HUD.

Plaintiffs also cite an August 2, 1982 letter from HUD counsel to the Court in which HUD stated it would move within a month for summary judgment. Defendants' failure to do so, according to plaintiffs, is evidence of bad faith. Plaintiffs have mischaracterized the record in this case. The August 2, 1982 letter noted that "[t]he parties are now attempting to arrive at a mutually acceptable date for filing of their motions for summary judgment and expect to submit a proposed schedule for the Court's approval in a few days." The record does reveal a letter received in chambers on August 10, 1982 in which counsel for the defendants indicated that the federal defendants "propose[d] to file a brief in support of its supplemental motion for summary judgment by August 31, 1982. Plaintiffs' counsel, in a submission to the Court on August 17, 1982, called this schedule "wholly unreasonable". Motion in Support of Plaintiffs' Motion for Praecipe and Leave to File October 8th, at p. 1. As such, the federal defendants were under no obligation to file by August 31, 1982.[6] Additionally, the defendants eventually filed their motion for summary judgment and opposition to plaintiffs' summary judgment motion within two weeks of Plaintiffs' Motion for Summary Judgment and one day late *with the permission of plaintiffs' counsel. See* Federal Defendants' Motion for 1 Day Enlargement of Time to File Opposition. There is simply no evidence of bad faith here.

Plaintiffs also assert that HUD "knowingly misled the Court and plaintiffs as to pivotal information before the Court." Plaintiffs' Memorandum at p. 24. They contend that HUD led the Court to believe that documents in the administrative record pertained to meter conversions in public housing projects, contained empirical data on meter conversions, and substantiated a 25–35% energy savings in public housing.

---

6. Under Fed.R.Civ.P. 56, counsel for federal defendants could have filed their motion for summary judgment "at any time".

*Id.* As the defendants have noted in their memorandum, plaintiffs "disagree with the *conclusion* drawn by HUD based on all of that data." Defendants' Memorandum at p. 35. This is the very nature of litigation.

Plaintiffs specifically point to the fact that the American Gas Association (AGA) "was forced to enter the case *amicus curiae* on appeal to alert the Court that HUD had misrepresented the information in an AGA study HUD placed on the record. Plaintiffs' Reply Memorandum at p. 11. Plaintiffs cited to page 6 of AGA's brief on appeal for the proposition that AGA entered the appeal for the "sole purpose" of correcting HUD's misleading of the Court. Closer examination of the AGA brief reveals that there were no charges of bad faith made by the AGA, nor did the AGA state that HUD was "misleading the Court." AGA merely informed the Court of Appeals that its own study was not a comparative analysis of energy efficiencies associated with various metering schemes. AGA's Brief on Appeal at p. 6.

There are several other contentions that plaintiffs make. First, they contend that on several occasions, HUD has not voluntarily complied with orders of the Court.[7] Specifically, plaintiffs allege that HUD continued to allow meter conversions after the Court of Appeals remand order of April 7, 1981. Plaintiffs' Memorandum at p. 26. This argument must fail because the only orders issued by any court that banned the expenditure of HUD funds for meter conversions were issued on March 3, 1982 and May 20, 1983, as amended on August 8, 1983, by this Court. The Court of Appeals did not enjoin any meter conversions, and therefore, HUD could not have been violating any court order by allowing such conversions before March 3, 1982.

As further evidence of non-compliance with Court orders, the plaintiffs point to HUD's alleged failure to immediately comply with the March 3, 1982 order enjoining meter conversions. Plaintiffs' Memoran-

dum at p. 28. As stated in its Opposition to Plaintiffs' Motion for Contempt, however, HUD had serious questions as to what the order actually enjoined. Although the order on its face enjoined all meter conversions, the suit only concerned those conversions made pursuant to the presumption contained in 24 C.F.R. 865.404. The federal defendants were reasonable in promptly moving for a Clarification or Amendment to the Order. Such an action, designed to ensure that they understood the provisions of the Court's order is evidence of good faith, not bad faith. It is conceded that after the Motion for Reconsideration was denied by this Court, the defendants complied. Plaintiffs' Memorandum at 28; Plaintiffs' Reply Memorandum at p. 10. The case at bar is therefore distinguishable from *Aero Corp. v. Department of the Navy,* 558 F.Supp. 404 (D.D.C.1983), on which plaintiffs rely. In *Aero,* the Court noted:

> A major factor in the Court's decision to make a bad faith attorneys' fee award in this case is the fact that defendant has never requested clarification or reconsideration from this Court regarding its orders nor appealed any of those orders to a higher court. Absent an appeal or requests for clarification or reconsideration, defendant is under an obligation to comply with the Court's orders, and the Court is entitled to demand such compliance.

*Id.* at 427–28. In *Aero,* the Court found a "vexatious and oppressive failure to respond to Court orders." *Id.* at 420. More specifically, the defendant had "knowingly failed to follow legal requirements reinforced by Court orders, that it consider competition in good faith." *Id.* at 428; *see also Fitzgerald v. Hampton,* 545 F.Supp. 53 (D.D.C.1982) (willful failure to adhere to the law). Such purposeful non-compliance with court-imposed obligations does not exist in the case at bar.

---

7. It should be noted here, that in its order dated December 23, 1983, the Court found that the plaintiffs had failed to put forth any *prima facie* evidence of non-compliance with the court's orders to justify any post-judgment discovery. This opinion, therefore, addresses plaintiffs' concerns of non-compliance that existed prior to the entry of final judgment on August 8, 1983.

Because the Court does not find defendants' actions in this case to rise to a level of bad faith, the Court denies plaintiffs' motion for attorneys' fees and expenses under § 2412(d) of the EAJA. An order will be entered in accordance with the foregoing.