**Thomas C. NIBALI**

v.

**The UNITED STATES.**

No. 207–74.

United States Court of Claims.

Aug. 13, 1980.

John F. Bufe, Washington, D. C., for plaintiff. Robert M. Tobias, Washington, D. C., atty. of record.

Sandra P. Spooner, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and NICHOLS and KUNZIG, Judges.

OPINION

NICHOLS, Judge:

This civilian pay case is before us on plaintiff's petition for attorney's fees, all other issues being disposed of. On December 13, 1978, this court rendered its decision on the merits holding for plaintiff. *Nibali v. United States,* 218 Ct.Cl. ——, 589 F.2d 514 (1978). The case was remanded to the trial division for a determination of quantum. The parties agreed to a stipulation which the trial judge recognized on October 19, 1978, in returning this case to the appellate division. His report stated that the

stipulation reserved for our determination plaintiff's claim to attorney fees against the United States. Plaintiff argues that he is entitled to such fees under the Civil Service Reform Act of 1978 (the Act or CSRA), Pub.L. No. 95–454, 92 Stat. 1111, 5 U.S.C. §§ 552 *et seq.* (1978). Specifically, plaintiff relies on 5 U.S.C. §§ 7701(g)(1) and (2), 5596(b), *as amended* by § 702, and § 1101 note (1976 & Supp. II 1978) for his theory of recovery. The sole question in the case at bar is whether attorney fees may be awarded in a civilian pay case pending before this court on the CSRA effective date, January 11, 1979. We hold that such fees are not available.

Initially, plaintiff asserts that § 5596(b)(1)(A), *as amended* by § 702, and § 7701(g)(1) and (2) entitle him to attorney fees against the United States.

§ 5596(b)(1)(A) reads in part:

(b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal of reduction of all or part of the pay, allowances, or differentials of the employee–

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect–

(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; and

(ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with chapter 71 of this title, shall be awarded in accordance with standards established under section 7701(g) of the title; * * *

Section 7701(g) states:

(1) Except as provided in paragraph (2) of this subsection, the Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee, as the case may be, determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

(2) If an employee or applicant for employment is the prevailing party and the decision is based on a finding of discrimination prohibited under section 2302(b)(1) of this title, the payment of attorney fees shall be in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

Plaintiff urges us to apply these provisions retroactively to his case. As support for his argument, plaintiff refers to the general rule regarding the impact on pending cases of intervening statutes, *i. e.,* that a court is to apply the law in effect at the time it renders its decision, unless to do so would result in "manifest injustice" or there is statutory direction or legislative history to the contrary. *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority of City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); and *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801).

Yet, in his discussion of the above–quoted provisions, plaintiff admits that " * * * review of the plain language of both sections reveals no guidance whatsoever concerning whether or not Congress intended the new

attorney fees provisions [sic] apply to pending cases." Moreover, plaintiff then concedes that " * * * the legislative history of these two aspects of the CSRA is also silent on this issue."

Having admitted all of this, plaintiff then proceeds to rely on § 1101 note of the CSRA, the "Savings Provisions" for support that §§ 5596(b) and 7701(g) ought to apply in this case. Section 1101 note states:

(a) Except as otherwise provided in this Act * * * all executive orders, rules, and regulations affecting the Federal service shall continue in effect, according to their terms, until modified, terminated, superseded, or repealed by the President, the Office of Personnel Management, the Merit Systems Protection Board, the Equal Employment Opportunity Commission, or the Federal Labor Relations Authority with respect to matters within their respective jurisdictions.

(b) No provision of this Act * * * shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.

(c) No suit, action, or other proceeding lawfully commenced by or against the Director of the Office of Personnel Management or the members of the Merit Systems Protection Board, or officers or employees thereof, in their official capacity or in relation to the discharge of their official duties, as in effect immediately before the effective date of this Act * *, shall abate by reason of the enactment of this Act * * *. Determinations with respect to any such suit, action, or other proceeding shall be made as if this Act had not been enacted.

From this section plaintiff concludes, via the use of a "negative inference," that had Congress intended to exclude the CSRA from retrospective application to cases pending in this court against the United States it certainly would have done so in part (c) of § 1101 note. Plaintiff argues that review of adverse actions pending in the Court of Claims, where the named defendant is the United States, were not included in part (c) of the Savings Provisions and thus, by implication, Congress intended through this omission that the CSRA should apply to such cases. Finally, while conceding that the legislative history of § 1101 note provides "little additional guidance" on the issue before the court, plaintiff again indulges in the use of the "negative inference," stating that " * * * the legislative history of the CSRA provides no support for the claim that the attorney fees provisions of the CSRA do not apply to pending cases before this Court."

Thus, plaintiff concludes that because there is no affirmative indication in the CSRA itself or its legislative history that the attorney fees provisions do *not* apply to cases pending before this court on January 11, 1979, the general rule enunciated in *Bradley* and *Thorpe* must govern absent manifest injustice—that where the intervening law is silent or ambiguous regarding its application to pending cases it is to be given recognition and effect.

For the following reasons, we do not find plaintiff's argument persuasive.

■ First, it is a long-standing rule of law that this court is without authority to award attorney fees against the United States without specific statutory authority. 28 U.S.C. § 2412 (1976); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 265–68, 95 S.Ct. 1612, 1626, 44 L.Ed.2d 141 (1975); *Aparacor, Inc. v. United States*, 215 Ct.Cl. 596, 571 F.2d 552 (1978); *Polos v. United States*, 621 F.2d 385 (Ct.Cl.1980); *Tucker v. United States*, 624 F.2d 1029 n.1 (Ct.Cl.1980).

*Aparacor, Inc. v. United States, supra,* is a leading case on the award of counsel fees in this court and the proper technique of construing legislation alleged to authorize such awards. Plaintiff, having won a tax refund suit, claimed award of such fees under a floor amendment to the then recent Civil Rights Attorneys Fees Awards Acts of 1976, Pub.L. No. 94–559, 90 Stat. 2641. The operative language relied on referred to " * * * any civil action or proceeding by or

on behalf of the United States of America to enforce, or charging a violation of a provision of the United States Internal Revenue Code * * *. Plaintiff alleged it was harassed in bad faith by the IRS. It relied mainly on a statement afterwards made by the mover of the floor amendment, that he intended to cover all tax litigation that may have resulted from IRS harassment, whether instituted by the United States or by the taxpayer. There was persuasive legislative history the other way. The best argument for plaintiff was the absurdly insignificant effect of the floor amendment, if literally construed. We held, however, that in tax refund suits against the United States, the Act did not make the specific provision for award of counsel fees that was required.

While in *Aparacor, Inc.* the absurd result argument worked for plaintiff so far as it worked at all, here it works for defendant. The negative inference contended for by plaintiff would authorize attorney's fees in old cases instituted here before the effective date of the Act, concede their denial in new cases pending in administrative bodies on the said effective date, and filed here later, and allow them again in the newest cases of all, those not pending administratively or here on the effective date. No reason is urged why Congress should wish to allow and deny attorney fees in such a capricious and whimsical fashion. We say nothing of how plaintiff's interpretation would affect other issues. This absurdity is avoided if we assume Congress neither intended nor expected that its enactment would have impact upon civilian pay cases instituted here before the effective date of the Act.

■ It also is a long–standing rule of law that the consent of the United States to be sued will not be extended beyond its literal terms and will not be implied. *United States v. King*, 395 U.S. 1, 4, 96 S.Ct. 948, 953–954, 47 L.Ed.2d 114 (1960); *United States v. Testan*, 424 U.S. 392, 399–400, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1976); *United States v. Mescalero Apache Tribe*, 207 Ct.Cl. 369, 518 F.2d 1309 (1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761

(1976). This rule applies not only to the general subject of the suit but to specific items of award. For example, interest. *Mescalero, supra.* Plaintiff is unable to cite us to any specific statutory language which expressly authorizes this court to award attorney fees against the United States. Plaintiff's argument is hopelessly dependent on implication and negative inferences and as such falls far short of that strict requirement that there be an express and specific statutory authorization of an award of attorney fees against the United States. Thus, we cannot embrace plaintiff's theory of recovery.

Defendant's interpretation is in harmony with the rationale stated by the Court of Appeals for the District of Columbia in its consideration of the applicability of the CSRA. *See Kyle v. Interstate Commerce Commission*, 609 F.2d 540 (1979). There the court stated that "if prior law is to govern the administrative state of a proceeding, it should govern judicial review as well." Id. at 542. Our own decision in *Gaskins v. United States*, App. No. 5–79 (Order dated October 23, 1979), is in agreement with *Kyle* and substantiates defendant's position on the matter.

### CONCLUSION OF LAW

Accordingly, plaintiff's claim for attorney fees is denied, and the petition for attorney fees is dismissed.