NICHOLS, Circuit Judge,
concurring in the result.
I concur in the result. Chief Judge Mar-key’s able opinion in my view makes a much stronger case for affirmance than is made in the necessarily hastily written opinion of the Claims Court, or in the government briefs. I no longer feel able to say, as I would have said before the reargument, that the case for reversal was the only one that was supportable. I believed all along that the statutory test was ambiguous, viewing section 1491(a)(3) by itself alone. I believed that the obvious repeated meaning of the word “claim” in the original Tucker Act of 1887,24 Stat. 505, included a demand for money accrued but not yet pursued in a lawsuit. The statute now to be construed picks up much of its language, including its use of “claim,” from that origin, and no change in meaning could have been intended. “Claim,” therefore, to my mind, included bid protests. The legislative history originally cited by the parties did nothing to discredit this interpretation. I now believe, however, that considering all the legislative history, my original construction cannot be said to be so obvious that a contrary view is frivolous, or untenable by objective minds. This being so, the doctrine of strict construction of the consent to be sued requires me to consider which of the contending views would grant the consent to be sued the least extensively. The doctrine requires that if there is real ambiguity in a statutory consent, the ambiguity must be resolved against the broad construction. The Supreme Court has said repeatedly that a consent to be effective must be “unequivocally expressed.” United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d *1378 52 (1969). While “equivocal” sometimes connotes an intentional ambiguity, as distinguished from one that is inadvertent or accidental, I do not think the Supreme Court intended this distinction nor do the dictionary definitions require it. For present purposes, therefore, statutory words which are “ambiguous” are not “unequivocal,” and judicial ingenuity to resolve the ambiguity, dehors the statute, is inappropriately exercised. There can be no doubt, therefore, that the majority’s result is the strict construction result.
Strict construction is fully applicable when subject matter consent is granted only as to one particular kind of relief, but not another. United States v. King, supra, United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889) (money damages but not declaratory judgment or injunction.) Assuming a consented suit for money damages, strict construction still determines whether add-ons such as interest and counsel fees are permissible. Nibali v. United States, 634 F.2d 494 (Ct.Cl.1980); United States v. Mescalero Apache Tribe, 518 F.2d 1309 (Ct.Cl.1975), cert. denied, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). It is at least theoretically conceivable, if it has not occurred, that a suit was unambiguously consented to, but there was ambiguity whether the suit was to be brought in tribunal A or B. In these circumstances, strict construction would require that neither A nor B would have jurisdiction, and the suit would fail for want of any tribunal having jurisdiction.
This is strict construction as I understand it. If a consent taken literally achieves insignificant results, not worthy of the attention of Congress, that is what strict construction requires, and reconstruction of the language to effectuate what is supposed to be the true intention of Congress is not permissible, though it might have been in a different context. Aparacor, Inc. v. United States, 571 F.2d 552 (Ct.Cl.1978). See Nichols, Judge, concurring at 558, and see exposition of this case in Nibali, supra.
As I stated in Mitchell v. United States, 664 F.2d 265, 277 (Ct.Cl.1981), the old Court of Claims—
* * * [H]as repeatedly failed to take the doctrine of strict construction of the consent to be sued with sufficient seriousness, and apparently nothing can shake its obstinate adhesion to error, to which it repeatedly returns like an alcoholic to the bottle. * * *
The cure was difficult because of attractive but misleading rhetoric like that of Mr. Lincoln that decorates the lobby of the National Courts Building. I hope, and from the result in the instant case, conclude, that the avoidance of reversible error will loom larger in our new court. The commission of it never gets anyone anywhere. There can be no question but that Congress is thoroughly aware of strict construction and enacts new consents such as § 1491(a)(3) in the expectation that they will be construed according to strict construction. If Congress wants to repeal strict construction, it has only to say so. I can’t help but think that some consents are enacted tongue in cheek, with the full expectation that their effect will be insignificant. Of this the enactment construed in Aparacor was a prime example.
The main trouble with the statute as construed by our majority is that it achieves an insignificant and absurd result. There was a big to-do in the legislative history about Congress wanting courts not to meddle unduly by injunction in the administration of government contracts, an understandable and worthy wish. Yet all they did, by strict construction analysis, was to send litigants wishing to procure such in-termeddling to one court in one time frame, to another court in another. If Congress had done nothing, the possibility of harmful judicial meddling with contract administration would have been exactly the same, no more and no less. There was surely nothing to show that intermeddling by the Claims Court would be more harmful than intermeddling by a district judge, or that intermeddling by the former would be more harmful after award than intermeddling before award, or that intermeddling by a district judge, on the contrary, would be *1379 less harmful after award than before. The bidder who for some inscrutable reason wants to litigate his bid protest only in the Claims Court need only file his suit without waiting to know if he has anything to protest. He may end up having sued to enjoin an award to himself. He will know enough not to believe a mere promise by the contracting officer to notify him before award. If some needless suits are filed, this should benefit some deserving members of the bar. The bidder who for some inscrutable reason wants to litigate only in the district court, need only hold his hand, ignoring plain intimations by the contracting officer that the award will go to another.
This is the zany scheme that, by strict construction analysis, Congress enacted.
In addition, it appears probable that many litigants wishing to obtain complete and entire relief, both injunction and bid preparation costs, will have to sue in two separate tribunals in order to do so. This is a favorable situation for the defense, and the ability to lay out an obstacle course in this manner is one of the incidents of the right to grant or withhold the consent to be sued, which the judiciary are not at liberty to bypass.
As I stated, dissenting in Mitchell, supra, no one would welcome more than I a legislative declaration that consents to be sued are to be construed liberally to effectuate the congressional intention. It seems to me that the outcome of this use ought to provide a push in that direction, and that is the best thing that can be said about it.