Howard **MORLEY**, Plaintiff,

v.

The Honorable Harold **BROWN**,
Secretary of Defense, et al.,
Defendants.

No. C78–116.

United States District Court,
N.D. Ohio, E.D.

April 5, 1985.

Mary J. Paolano, Cleveland, Ohio, for plaintiff.

Mark Kinot, Asst. U.S. Atty., Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Plaintiff on August 27, 1982 filed a motion for attorneys fees and expenses. As of January 10, 1984, plaintiff sought the total amount of $10,798.68 for two attorneys in fees and expenses covering the period December 7, 1977 through January 8, 1984.

## I.

## CASE HISTORY

On February 2, 1978, plaintiff, an employee of the Defense Logistics Agency (hereinafter DLA), filed a complaint challenging a promotion decision which was made between April 1, 1975 and June 11, 1975. Plaintiff, a white male who was 59 years old in 1978, claimed that despite receiving a higher score from the promotion panel (based on his qualifications)[1] he was denied the promotion; a black male, approximately ten years younger, received the promotion to the post of Chief, Office of Contract Compliance, Defense Supply Agency. Plaintiff claimed he was denied the promotion because of race and age discrimination in violation of 42 U.S.C. § 1981; 42 U.S.C. 2000e–16; 5 U.S.C. §§ 7151, 7154, and 5 C.F.R. 713 *et seq.* He also claimed the DLA violated procedures under the Federal Merit Promotion Program.

Before filing his action in federal court, plaintiff filed a formal grievance on July 18, 1975 with his commander at the Defense Contract Administrative Services Region (DCASR). On August 19, 1975, plaintiff rescinded his formal grievance. However, on that same date the DCASR reject-

ed his grievance. On November 15, 1976, plaintiff was reassigned. On November 10, 1976, plaintiff appealed his 1975 non-promotion and reassignment to the Federal Appeals Board, Civil Service Commission. The Board denied his request on December 9, 1976. On November 18, 1976, plaintiff wrote a letter to the Director of the Defense Logistics Agency protesting his non-selection and reassignment. On February 3, 1977, the DLA rejected plaintiff's grievance. On February 2, 1978, plaintiff filed the instant action in this Court.

On January 13, 1982, this Court granted the defendants' motion to dismiss for lack of subject matter jurisdiction as it applied to plaintiff's race and age discrimination claims but denied defendants' motion to dismiss regarding alleged violations of the Federal Merit Promotion Program. The Court remanded the latter claim as a grievance to the DLA and reactivated the grievance procedure for plaintiff; the Court found that the agency could continue the investigation but that the Court lacked jurisdiction to pursue a *de novo* review of the matter. Opinion at 6.

On May 7, 1982, plaintiff renewed his DLA grievance and requested attorneys fees and expenses from DLA. On June 10, 1982, the DLA decided in plaintiff's favor as to the grievance but denied the request for attorneys fees. The DLA found that plaintiff had been harmed by an "unjustified or unwarranted personnel action." On June 29, 1982, the DLA Civilian Personnel Director notified plaintiff of the retroactive promotion and corrective pay actions in his case. On July 13, 1982, the promotion document was executed. On July 23, 1982, plaintiff received his first check from the Department of Defense.

On July 9, 1982, plaintiff submitted to the DLA a request for reconsideration of the DLA's denial of attorneys fees. On August 5, 1982, DLA stated that it lacked

---

**1.** Plaintiff claimed that the promotion panel did not consider his outstanding awards (which they were required to do) in calculating his score. Complaint of February 2, 1978, at 2 (item 14).

authority to award attorney fees to plaintiff under the Equal Access to Justice Act.

On August 27, 1982, plaintiff filed the instant motion for attorney fees and costs totaling $6,878.41 for the period December 7, 1977 through August 26, 1982. On January 10, 1984, plaintiff submitted a revised affidavit listing the amount sought for December 7, 1977–August 26, 1982 as $7,234.66 and adding the amount of $3,564.02 for the period August 27, 1982–January 8, 1984.

## II.

Although the traditional "American Rule" holds that a prevailing party ordinarily cannot collect attorneys fees, *Alyeska Pipeline Service Co. v. Wilderness Soc'y.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), Congress has enacted statutes to permit the award of such fees in federal courts. The Equal Access to Justice Act, P.L. 96–481 (effective October 1, 1981), which amends 28 U.S.C. § 2412, states in pertinent part:

(a) Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency and any official in the United States acting in his or her official capacity in any court having jurisdiction of such action.

(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

\*　　\*　　\*　　\*　　\*　　\*

(d)(1)(A) Except as otherwise specifically provided by statute, a court *shall* award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.[2] (Emphasis added)

28 U.S.C. § 2412 (as amended Oct. 21, 1980, Pub.L. 96–481, Title II, § 204(a), 94 Stat. 2327.)

Thus, there are two bases for awarding fees against the United States; § 2412(d) is mandatory and § 2412(b) is discretionary. *Keasler v. United States*, 585 F.Supp. 825, 830 (E.D.Ark.1984); *Dubose v. Pierce*, 579 F.Supp. 937, 946 (D.D.C.1984). Hence, § 2412(d) makes the award of attorney fees obligatory (note "shall") for cases pending or commenced on or after October 1, 1981 and before October 1, 1984 unless the government was substantially justified in its position or special circumstances exist. Defendant, however, alleges that the Equal Access to Justice Act [hereinafter EAJA] is inapplicable in the instant case because plaintiff failed to timely file his application for fees. The requirements for applicability of the EAJA will be considered in turn. First, the current action was pending on October 1, 1981. Although initiated in February 1978, the case was not resolved by the Court until January 1982 by the entry of a partial dismissal and remand opinion and order. Once final judgment is entered, the prevailing party has thirty days to file an application for attorney fees and costs.

---

**2.** Section 204(c) of P.L. 96–481 repealed subsection (d) of § 2412, effective October 1, 1984. However, the § 2412(d) continued to apply "through final disposition of any action commenced before the date of repeal."

28 U.S.C. § 2412(d)(1)(B).[3] The Judgment Entry in this matter was filed on January 13, 1982. However, plaintiff did not file an application for fees and other expenses until August 27, 1982.

Plaintiff responds that the Court's January 13, 1982 judgment entry was not a "final judgment." Rather, it was a disposition of the age and sex discrimination claims but it did not conclude the litigation regarding the Federal Merit Promotion program and plaintiff's right, if any, to the promotion and back pay. Plaintiff claims that the "final judgment has not been made [in this case]. The 30 days limitation set forth in 28 U.S.C. § 2412(d)(1)(B) has not begun to run." Reply to Memorandum of Defendant Harold Brown Regarding Applicability of 28 U.S.C. § 2412(d) in this Action, at 10.

Defendant's answer is that the DLA's decision to promote plaintiff and award back pay on June 10, 1982 or July 13, 1982[4] cannot be used as the date from which the thirty day period begins to run since "the DLA's determination was not a 'final disposition in [an] adversary adjudication'." Defendant's Memorandum Regarding the Applicability of 28 U.S.C. § 2412(d) to the Instant Action, at 7.

This Court must therefore decide what constitutes a "final judgment" in an action like this where the Court's earlier judgment calls for further administrative action. Because the EAJA is a waiver of sovereign immunity, the statutory time limit is a "jurisdictional prerequisite" to the award of attorney fees under the EAJA. *Clifton v. Heckler*, 755 F.2d 1138, 1145 (5th Cir.1985); *Action on Smoking and Health v. C.A.B.*, 724 F.2d 211, 225 (D.C.Cir.1984).

The question of what constitutes a timely filing and a "final judgment" under the EAJA has been litigated several times before. The clearest statement of the meaning of those terms is found in *Taylor v. United States*, 749 F.2d 171 (3d Cir.1984). In that case, a serviceman sought an injunction in district court to prevent the Navy from transferring him from American custody to Spanish authorities. The district court issued the injunction and ordered plaintiff released from custody on July 15, 1982. On June 21, 1983, the district court's decision was affirmed in *Taylor v. United States*, 711 F.2d 1199 (3d Cir.1983). The Third Circuit denied rehearing en banc on July 21, 1983. On August 2, 1983 the district court received the Third Circuit's affirmance. On August 25, 1983, plaintiff filed his application for fees under the EAJA. The district court denied Taylor fees on the grounds that his application was not timely filed within thirty days of the district court judgment, *Taylor v. U.S.*, 580 F.Supp. 687 (E.D.Pa.1984).

In considering plaintiff's appeal, the Third Circuit noted that the circuits have been split on what constitutes a "final judgment." Essentially, the Seventh Circuit decision in *McDonald v. Schweiker*, 726 F.2d 311, 315 (7th Cir.1983) and the Ninth Circuit position in *McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983) form the poles of interpretation of this term.

In *McDonald v. Schweiker*, 551 F.Supp. 327 (N.D.Ind.1982), plaintiff filed an action seeking judicial review of the Secretary of Health and Human Services' decision on her old age insurance benefits. The District Court granted plaintiff's motion for

**3.** 28 U.S.C. § 2412(d)(1)(B) states:

A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at

which fees and other expenses are computed. The party shall also allege that the position of the United States was not substantially justified.

**4.** It is not clear which date defendants are referring to. However, since the defendants state "plaintiff submitted to the DLA a [fee application pursuant to 5 U.S.C. 504] on the 29th day after the DLA's favorable determination", defendant apparently is referring to the June 10, 1982 back pay authorization decision.

summary judgment on October 5, 1981. On April 22, 1982, defendant Health and Human Services notified plaintiff it would begin awarding her benefits. On April 20, 1982, plaintiff filed for attorney's fees under the EAJA. Defendants in *McDonald* contended that plaintiff's request was not timely made. Noting the legislative purpose of EAJA and that, a judgment could be 'final' in one legal context but 'not final' in another, the Court held:

> The requirement in EAJA that an application for an award of fees be filed within thirty days of the final judgment means that an application must be filed within thirty days of the expiration of the time to appeal or within thirty days of the terminating action in the court of last resort. This still permits an application for fees upon entry of final orders at earlier stages of the litigation. The court may award fees at such stages or defer its ruling until the final judgment on the merits.

*McDonald*, 551 F.Supp. at 330.

The Court found the application timely and appropriately filed. The Seventh Circuit affirmed the district court's reasoning as to the timeliness issue: "[W]e interpret the ... [term] 'final judgment' [to] mean the final decision of the appellate court." *McDonald*, 726 F.2d at 314. The Seventh Circuit, however, reversed the district court's award of fees, finding that the government's position was substantially justified.

However, in *McQuiston v. Marsh*, 707 F.2d 1082 (9th Cir.1983), the Court rejected the holding of *McDonald v. Schweiker*, 551 F.Supp. 327, 329 (N.D.Ind.1982). *Accord Massachusetts Union of Pub. Housing Tenants v. Pierce*, 577 F.Supp. 1499, 1503 n. 4. (D.D.C.1984) In that case, plaintiff sought to enjoin the Army from awarding a contract. The Court granted the government's motion to dismiss on January 14, 1982 and plaintiff moved for fees on April 12, 1982. The Court stated: " '[F]inal judg-

ment' should be defined by its common usage in contexts such as 28 U.S.C. § 1291, Fed.R.App.P. 4(a), and Fed.R.Civ.P. 54. Therefore, a request for attorneys' fees under [28 U.S.C. § 2412] subsection (d) is untimely if filed more than 30 days after the district court has entered judgment." *McQuiston*, 707 F.2d at 1085.

However, the Third Circuit in *Taylor* found that "Congress has clarified the meaning of 'final judgment' for purposes of the EAJA, adopting the Seventh Circuit *McDonald* approach." *Taylor*, 749 F.2d at 173.

Specifically, the *Taylor* court cited the Senate Judiciary Committee report on S. 919, S.Rep. No. 98–586, 98th Congress, 2d Sess. 16 (1984), which sought to reenact the EAJA. The Senate report stated that:

> The issue was raised in the hearings as one in need of clarification.... This issue is important since the thirty-day deadline for filing the fee application is jurisdictional and cannot be waived.
>
> The Committee believes the interpretation of the Court in *McDonald v. Schweiker*, 726 F.2d 311 (7th Cir.1983) regarding this issue is the correct one.
>
> ... [In that case] [t]he EAJA did not require that the application be submitted within 30 days of the rendering of the district court decision.
>
> The EAJA allows a prevailing party to file a fee petition within 30 days of the final disposition of a case on the merits i.e. when a party's right to appeal the order has lapsed.

*Taylor*, 749 F.2d at 174.

The Court noted that S. 919 had not been signed by the President and made law; however, the clarification of the meaning of "final judgment" could still be used to determine Congressional intent for cases still covered by the EAJA. *Id.*[5]

█ In the absence of 6th Circuit guidance on this issue, this Court finds the Third Circuit's analysis in *Taylor* per

**5.** Legislative history on the EAJA can be found at H.R.Rep. No. 1434, 96th Cong. 2d Sess. 26 (1980), reprinted in 1980 U.S.Code Cong. & Ad. News 4953, 5003, 5015 and H.R.Rep. No. 1418, 96th Cong. 2d Sess. 18 (1980), reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4997.

suasive and adopts the interpretation of "final judgment" therein. Hence, for a EAJA fee petition to be timely, it must be filed no later than thirty days after the expiration of the time to appeal, or after the termination of the litigation by the court of last resort, or after a losing party asserts that no further appeal will be taken.

In applying this interpretation of "final judgment" to the facts of the instant case, the Court is guided by another Third Circuit case, *Miller v. United States*, 753 F.2d 270 (3d Cir.1985). Miller, an employee of the Army, was discharged from his job on the ground that he was overqualified. Miller appealed this discharge to the Merit System Protection Board (MSPB) which dismissed his appeal. Miller sought Third Circuit review of the MSPB's dismissal. On September 21, 1983, the Third Circuit remanded Miller's case to the MSPB for reconsideration on the merits. On November 21, 1983, Miller applied for fees under EAJA. On April 11, 1984, the MSPB ordered Miller reinstated. Miller amended his fee application and also appealed to the Court of Appeals for the Federal Circuit to get backpay and benefits. On October 17, 1984, the appeal was dismissed since the government did make a backpay and benefits award. Miller then amended his fees application. The government attacked Miller's petition as untimely since it was filed more than thirty days after the Third Circuit's order remanding the case to the MPSB. Miller contended his application was timely since it was filed prior to thirty days after time had expired for the govern-

ment to appeal the Third Circuit remand decision. The Court, using the *Taylor* rule, found the *Miller* application for fees timely.

Another case is valuable in applying the timeliness rule. In *Haney v. Heckler*, No. 82C–7714, slip op. at 14 (N.D.Ill. Sept. 10, 1984) (Getzendanner, J.), plaintiff sought review in district court under 42 U.S.C. § 405(g) for termination of his Social Security disability benefits. On January 26, 1984, the court remanded his case to the Secretary of Health and Human Services for reconsideration. Plaintiff applied for attorneys fees under EAJA on March 13, 1984. *Id.* at 4. In *Haney*, the Court adopted the rule of *McDonald v. Schweiker* (the same case endorsed by *Taylor*) and found "final judgment" to be the time at which the government's time to appeal expired. Under Federal Rule of Appellate Procedure 4(a)(1), the United States has 60 days from the date of entry of the district court's judgment to file an appeal.[6] The *Haney* court went on to state "[w]here no appeal is filed, the completion of appellate proceedings is simply the expiration of the time in which to appeal." *Id.* at 4. Hence, the "final judgment" occurs 60 days after the district court decision.

 In the instant case then, "final judgment" occurred 60 days after the remand decision; since the remand decision was entered on January 13, 1982, final judgment occurred on March 12, 1982.[7] Plaintiff then had another 30 days under § 2412(d)(1)(B) to apply for fees, pushing the application deadline to April 11, 1982. However, plaintiff did not file his applica-

---

6. F.R.App.P. 4 reads in pertinent part:
 (a) **Appeals in civil cases**
 (1) In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry....
 (2) Except as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before the

entry of the judgment or order shall be treated as filed after such entry and on the day thereof.

7. The Court does not consider whether the date the opinion and order was filed or the date that the judgment entry was docketed should be used as the starting date for the running of the 30-day time period. In *Berman v. Schweiker*, 531 F.Supp. 1149, 1152 (N.D.Ill.1982), the latter date was chosen. In the instant case, the Court uses the date that judgment was entered, January 13, 1982, which was also the date on which the opinion was filed.

tion under § 2412(d)(1)(B) *with this Court* until August 27, 1982. Not only did plaintiff not file an application until more than 4 months had passed from the April 12, 1982 deadline but the docket reveals no documents were filed with this Court by either party between the entry of the Court's order and the August 27, 1982 fee application. Hence, under the interpretation of "final judgment" in § 2412(d)(1)(B), plaintiff's application was untimely and should be denied.

It is indeed true that plaintiff filed an application for fees with DLA on May 7, 1982 and then resubmitted the fee request under EAJA to the DLA on July 9, 1982. The May 7, 1982 request was made pursuant to 5 CFR § 550.806.

However, in plaintiff's July 9, 1982 letter to defendant DLA renewing his request for payment of attorney fees, there is no reference made to the EAJA. Plaintiff's counsel's letter merely states:

> As to the denial of the request for payment of attorney fees, we except. This denial is in error. Howard Morley is entitled to attorney fees and costs incurred in prosecuting [his case in federal court. which resulted in the administrative review.
>
> The request for attorney fees and expenses is therefore resubmitted. We are requesting that the agency reconsider the request for attorney fees and costs.

The only reference to the EAJA appears in the affidavits which itemize the services rendered, time expended and cost. On page C2, the service description for July 7, 1982 includes "research re: attorney fees, Equal Access and Justice Act, other statutory sections; regulations." There is no reference to the EAJA in the DLA's August 5, 1982 letter to plaintiff's counsel denying the fee request. It merely states "This agency has no authority to pay either litigation expenses or expenses in connection with the administrative proceeding."

Plaintiff describes the July 9, 1982 request as "comporting with the requirements of the Equal Access to Justice Act, 5 U.S.C. 504 et seq." Motion for Attorney Fees and Expenses, Aug. 27, 1982, at 2.

Nowhere, however, in that document does plaintiff state the reconsideration request is made pursuant to EAJA. Furthermore, the Court is puzzled why counsel would even submit a fees request based on EAJA to the DLA. It is clear from the EAJA statute that fee applications are to be filed *with* the *Court*, not with the administrative agency who is the defendant. The statute repeatedly talks about "the court awarding" fees. Hence, the only institution with both the authority to enter judgment and enforce such a fee award is the Court. It is therefore incredible that plaintiff would file a fee request under EAJA with the DLA and hope to prevail. Therefore, the only document which can truly be considered a fee application under the EAJA was the August 27, 1982 Motion for Attorney Fees filed with the Court.

However, this Court believes it would undermine the intent and spirit of the EAJA were plaintiff required to file for attorney fees prior to the resolution of the administrative proceeding ordered by the Court. Indeed, as in *Miller v. United States*, 753 F.2d 270, 273 (3d Cir.1985), if plaintiff filed his fee request on April 12, 1982, he would not have been a prevailing party. "When a court vacates an administrative decision and remands the matter for reconsideration, the successful party generally should not recover attorney's fees at that particular time since the claimant's rights and liabilities have not yet been determined." *Id.* at 273–74 (quoting *Brown v. Secretary of Health and Human Services*, 747 F.2d 878, 883 (3d Cir.1984)). The *Miller* Court went on at great length in footnote 1 to recognize that problems would arise for litigants who receive Court orders remanding their case. *See Id.* at 274 n. 1. This Court finds the solution of the Third Circuit appropriate and consistent with principles of federal jurisdiction, namely that the "final judgment" was the decision of the appropriate administrative agency following the remand order since the Court "retained jurisdiction over the case to ensure that the mandate was carried out." *Id.* at n. 1. While other problems may arise with this interpretation as

it applies to the acts, *see Guthrie v. Schweiker*, 718 F.2d 104, 106 (4th Cir.1983), the date of the administrative agency's decision satisfies the need for a clear date from which to count the time period. *See Monark Boat Co. v. NLRB*, 708 F.2d 1322 (8th Cir.1983).

■ The date of the DLA's decision awarding plaintiff back pay and promoting him as the final judgment is June 10, 1982. Hence, plaintiff had thirty days from that date to file an application for fees with this Court. He did not. In fact, plaintiff waited nearly thirty days to file a request for reconsideration on July 9, 1982.

The Court cannot consider the instant motion for fees timely filed without straining not only principles of statutory interpretation but reasonableness. It is true that the Court could start the thirty day period running from August 5, 1982, the date when the DLA denied plaintiff's request for reconsideration. But to do so would legitimate what has already been determined to be an inappropriate motion: there was no reason for plaintiff to believe that the DLA had jurisdiction to award fees under EAJA and any application should have been filed in district court. Clearly plaintiff and his counsel have engaged in lengthy and complicated proceedings; to contest a decision made in 1975, they waged approximately a 7-year battle. It is to the credit of not only these plaintiffs, whatever the outcome, but all persons in similar situations who have the tenacity and determination to pursue their claims through the courts and the labyrinth of the. modern administrative state. Despite the confusion and complexity of the statutes and regulations involved here, however, the Court cannot permit plaintiff to decide when it is appropriate to file a fee application under EAJA given the time bar of § 2412(d)(1)(B). It would, of course, been a different matter if counsel had made a preliminary application for fees with the Court or sought extensions of time for its application pending the administrative determinate of its fee request. *J.H. Miles & Co. v. U.S.*, 3 Cl.Ct. 10 (1983). (motion for enlargement of time within 30-day period of filing for award of attorney fees does not toll running of limitation period). However, the docket is bare of any such filing. Therefore, this Court finds plaintiff's motion for fees under § 2412(d) untimely filed and dismisses it for lack of jurisdiction.

### III.

Although the Court has found plaintiff's request under § 2412(d) untimely (and consequently the Court is without jurisdiction), the issue remains whether plaintiffs are entitled to fees and expenses under § 2412(b), the second, discretionary basis for fees under the EAJA.

■ There is no time limit for fee applications under § 2412(b). "In the absence of a specific time restriction, a request is timely if filed within a reasonable period after entry of judgment and if it does not unfairly surprise or prejudice the affected party." *Massachusetts Union of Pub. Housing Tenants v. Pierce*, 577 F.Supp. 1499, 1501 (D.D.C.1984); *McQuiston v. Marsh*, 707 F.2d 1082, 1084 (citing *White v. New Hampshire*, 455 U.S. 445, 454, 102 S.Ct. 1162, 1167, 71 L.Ed.2d 325 (1982)); *Gordon v. Heimann*, 715 F.2d 531, 539 (11th Cir.1983). In *Massachusetts Union*, the Court found a time period of 86 days after the entry of judgment as reasonable and found the § 2412(b) application timely. *Mass. Union*, 577 F.Supp. at 1501. In the instant case, nearly 240 days passed before a motion for fees was made. However, the Court need not determine whether this time was reasonable. Finding that defendants were aware that plaintiff was seeking fees based on the requests of May 7, 1982 and July 9, 1982, there is no chance that defendants were surprised or prejudiced. Hence, this Court regards plaintiff's application for § 2412(b) fees as timely.

■ The common law rule, incorporated in § 2412(b) to apply to the government, is that attorneys fees are recoverable if the non-prevailing party acted in "bad faith" or the prevailing party's success created a "common benefit" or "common fund" in which others share or the non-preventing party willfully disobeyed a court order. *Alyeska Pipeline*, 421 U.S. at 247, 257–59, 95 S.Ct. at 1616, 1621–23. There is no

statute prohibiting an award of fees in the instant case. Plaintiff does make a claim for attorney fees under § 2412(b) claiming "In Morley's case, the conduct of the agency on all levels was vexatious, obstructive, insulting, and unjust and constitutes bad faith on the part of the agency." Motion for Attorney Fees and Expenses, Aug. 27, 1982, at 10. Recovery of attorney fees is permitted when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska*, 421 U.S. at 258–9, 95 S.Ct. at 1622–3. Plaintiff's only theory for recovery is bad faith under § 2412(b); there is no basis for a common fund or benefit recovery nor is there any allegation that defendants disobeyed a court order. "Bad faith" has also been identified as conduct which constitutes "insult added to injury." *Fitzgerald v. Hampton*, 545 F.Supp. 53 (D.D.C.1982). Bad faith can be found in conduct either prior or during litigation. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mass. Union*, 577 F.Supp. at 1503. Because an award of attorneys fees is extraordinary and punitive, the standards for bad faith are "stringent". *Mass. Union*, 577 F.Supp. at 1504.

First, plaintiff bases his claim of "bad faith" on the fact that the DLA directly violated certain provisions of the Federal Merit Protection Program and DSA regulations. He also claims bad faith may be inferred from "DLA's [repeated] [refusals] on all levels to process Morley's grievance of his non-selection", the abolition of his position and reassignment; and threats from superiors if he pursued his grievance. Plaintiff's Motion for Fees, at 9–10.

■ It would not comport with the fundamental notion of attorney fees as a sanction to punish defendant for the non-selection alone. Indeed, it was the very purpose of the administrative proceeding ordered by this Court to determine if agency procedures and regulations had been violated and a mistake made. In this case, in his June 10, 1982 decision and letter to plaintiff, DLA Colonel Melvin Brown found that the promotion decision which plaintiff raised in his grievance "was not accomplished in accordance with DCASR Cleveland's Merit Promotion Program. Further,

I have determined that, as a result of [your non-selection], you were affected by an unjustified or unwarranted personnel action which resulted in the denial of pay otherwise due you." Plaintiff's receipt of back pay and promotion constitute adequate vindication of his claim that agency procedures were violated. A violation of an agency's procedures is not a prima facie act of bad faith.

Considering the remainder of plaintiff's grounds, the Court concludes that none of defendants actions rise to the level of bad faith. Plaintiff's claims of harassment from a superior and reassignment and demotion have not been conclusively established. Indeed, there is a dispute, judging from various filings in this case, whether these events occurred and whether the abolition of his position was unique in the country so as to create an inference that plaintiff was the object of an effort to intimidate and injure him. No opinion can be expressed on whether age or racial discrimination was a motivating factor. The Court dismissed these claims because plaintiff failed to raise them in his grievance at any administrative level. However, were these discriminatory practices found there may have been grounds for a finding of bad faith. As it stands, there is no basis to find bad faith on defendants' part.

Plaintiff cites only one case in his Motion for Attorney Fees as supporting a finding of bad faith in conduct occurring before litigation commenced: *Fitzgerald v. Hampton*, 545 F.Supp. 53 (D.D.C.1982). In that case, the court stated "prelitigation conduct provides the basis for an award of attorney's fees when a party, confronted with a clear statutory or judicially imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights." *Id.* at 57. In *Fitzgerald*, an Air Force employee was dismissed following his testimony before Congress on costs for the C–5A transport plane. Fitzgerald processed his claims through the Civil Service Commission and finally sought judicial review of the decision. The CSC ordered Fitzgerald restored and promoted. The

Court found the CSC's failure to find that plaintiff had suffered a reduction in rank arbitrary and capricious and ordered Fitzgerald reinstated to his prior position. *Id.* at 54. In his request for fees under § 2412(b), plaintiff alleged that the Air Force had "flouted" the court and CSC's order to restore Fitzgerald to an equivalent position. The Court found that the Air Force was under a clear duty from the CSC order to restore plaintiff and that the Air Force failed to do so. The Court detailed at length the Air Force's use of "unconventional tactics," *id.* at 59, and "extraordinary steps," *id.* at 58, including memos and threats, to prevent the reinstatement. Hence, plaintiff "was compelled to resort to litigation, first at the administrative level and then in this Court, in order to vindicate his legal rights." *Id.* at 60.

This Court agrees with defendant in finding *Fitzgerald* distinguishable from the instant case. There is no standing administrative order here, as in *Fitzgerald*, which created an obvious statutory or judicial duty for the DLA. Secondly, there is no allegation that the DLA flouted this Court's order of January 13, 1982 to reinstate plaintiff's grievance. Plaintiff resubmitted his grievance on May 7, 1982 and by June 10, 1982, the DLA rendered a favorable decision. Certainly, there was no undue delay in processing this grievance. By July 13, 1982, plaintiff's promotion was executed and by July 23, 1982 plaintiff received his first payment. Hence, there is no evidence that once the appropriate agency order issued, defendants failed to discharge their promotion and back pay obligations.

■ Thus, this Court finds no basis for finding that defendants acted in bad faith. Accordingly, plaintiff's application for fees under section 2412(b) is denied.

### IV.

■ Section 2412(d) grants courts powers to award only those fees and expenses incurred by a prevailing party during "actions in court." *Miller v. United States,* 753 F.2d 270, 272 (1985). Section 2412 allows recovery for fees at both trial and appellate levels. *Keasler,* 585 F.Supp. at 830, n. 2. However, § 2412(d)(3) states that a court reviewing an adversary adjudication shall include in its award fees for work done before the agency to the same extent [the agency is] authorized to award fees under 5 U.S.C. § 504(a). *Id.* at 275. However, this Court has already found that it is without jurisdiction to consider the § 2412(d) fees request based on the untimeliness of the application. Based on this ruling and the denial of plaintiff's § 2412(b) claim, plaintiff will not receive fees for work done at the trial court level nor recover fees for work done before the DLA under § 2412(d).

■ Plaintiff, nonetheless, claims that he was wrongfully denied attorney fees by the DLA under 5 U.S.C. § 504. 5 U.S.C. § 504 states in pertinent part:

Any agency that conducts an adversary adjudication shall award, to a prevailing party, other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency as a party to the proceeding was substantially justified or that special circumstances make an award unjust.

Under 5 U.S.C. § 504(c)(2), a party dissatisfied with the fee determination made under subsection (a) may petition for leave to appeal to the court retaining jurisdiction to review the merits of the underlying decision of the agency adversary adjudication. Each agency is to establish uniform rules for agency determinations of fee requests. 5 U.S.C. § 504(c)(1). Since the Court is reviewing only the fee determination here and not the underlying decision, it is bound by the restrictions of 5 U.S.C. § 504(c)(2).[8] In other words, the Court cannot award

---

**8.** 5 U.S.C. § 504(c)(2) states:

A party dissatisfied with the fee determination made under subsection (a) may petition for leave to appeal to the court of the United States

having jurisdiction to review the merits of the underlying decision of the agency adversary adjudication. If the court denies the petition for leave to appeal, no appeal may be taken from

fees but only determine if there was an abuse of discretion.

It appears that the DLA in processing applications for attorney fees follows the procedures laid out in 5 C.F.R. § 550. 5 C.F.R. § 550.806(a) permits recovery of attorney fees for an "unjustified or unwarranted personal action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentiates otherwise due to the employee." The section goes on to say fees *shall* be awarded to an employee affected by an unjustified or unwarranted personnel action if it is the interest of justice, as judged by the standards of the Merit Systems Protection Board, and a specific finding that the payment is in the interest of justice is made by the agency. 5 C.F.R. § 550.806(c)(1)–(c)(2).

In the instant case, the DLA did not reach the issue of "the interest of justice." Instead, it found that since 5 C.F.R. § 550.-806(h) states "This section does not apply to any administrative proceeding that was pending on January 11, 1979," and plaintiff's action was initiated before that date, the fee request should be denied.

Plaintiffs argue that "since the DLA ... refused to process Howard Morley's grievance, under the law of this case, no administrative proceeding was pending on January 11, 1979, and not until May, 1982, when Howard Morley was able to file his grievance and the Agency was compelled to process it." Plaintiff's Brief in Support of Motion for Attorney Fees, June 10, 1983, at 16. Defendants respond by finding the effective date as July 18, 1975 when plaintiff submitted his grievance to the DLA. Defendant notes that the 1975–77 administrative proceedings are the basis for the cause of action. Memorandum Contra Motion for Attorney Fees and Expenses, at 3.

In its June 10, 1982 decision denying fees, the DLA justified its action on the grounds that 5 CFR 550.86 does not retroactively apply to any administrative pro-

ceeding that was pending on January 11, 1979. The DLA interpreted "pending on" to mean "initiated before"; since plaintiff's grievance was submitted on July 18, 1975, DLA concluded that 5 CFR 550.86 did not apply. *See* Defendant's Reply to Plaintiff's Brief in Support of Motion for attorney Fees and Expenses Sept. 28, 1982, at 2–4. Plaintiff contends that the administrative proceeding was not pending until May 7, 1982, after the Court had ordered the remand of plaintiff's case to the DLA. Motion for Attorney Fees and Expenses, August 27, 1982, at 4–5. The Court must therefore address the meaning of "pending" under 5 C.F.R. § 550.806(h) to determine whether the DLA abused its discretion in denying plaintiff fees incurred in his administrative proceedings.

As Judge Marshall noted in *Berman v. Schweiker*, 531 F.Supp. 1149 (N.D.Ill.1982), "there is little legislative history or case law on the meaning of the word 'pending.'" *Berman*, 531 F.Supp. at 1151. The generally accepted meaning is that a case is "pending" so long as the losing party's right to appeal has not yet been exhausted or expired. *Dubose v. Pierce*, 579 F.Supp. 937, 947 (D.D.C.1984).

The general rule regarding the impact of intervening statutes on pending cases is that a court is to apply the law in effect at the time it renders its decision unless to do so would result in "manifest injustice" or there is statutory direction or legislative history to the contrary. *Nibali v. United States*, 634 F.2d 494, 495, 225 Ct.Cl. 8 (1980). However, here the Court has the provisions of the Code of Federal Regulations.

Plaintiff does not challenge defendant's authority to promulgate 5 CRF § 550.-806(g) nor the validity of the rule under 5 U.S.C. § 5596(b)(1)(A)(ii), which authorizes reasonable attorney fees for back pay awards due to unjustified personnel actions. 5 U.S.C. § 5596 refers to standards established in 5 U.S.C. § 7701(g).[9]

---

the denial. If the court grants the petition, it may modify the determination only if it finds that the failure to make an award, or the calculation of the amount of the award, was an abuse of discretion.

**9.** 5 U.S.C. § 5596(b)(1) states:
An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appro-

The seminal case interpreting the word "pending" as it applies to 5 U.S.C. § 7701(g) is *Skinner v. EEOC,* 551 F.Supp. 333 (W.D.Mo.1982). In that case, plaintiff sought attorney fees for work done before the Equal Employment Opportunity Commission in pursuing her sex discrimination claim. Plaintiff sought fees on two separate grounds: (1) the provisions of the Civil Service Reform Act of 1978, 5 U.S.C. § 7701(g) and (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). The Court denied plaintiff fees on both grounds. Specifically with regard to the § 7701(g) claim, the Court stated that "plaintiff [could not] take advantage of that section because her proceedings were instituted prior to the effective date of the Act." *Id.* at 336. To support its holding, the Court cited the Merit Systems Protection Board's interpretation of the rules promulgated under the Civil Service Reform Act:

> (b) Administrative proceedings and appeals therefrom.
>
> No provision of the Civil Service Reform Act shall be applied by the Board in such a way as to affect any administrative proceeding pending at the effective date of such provision. "Pending" is considered to encompass existing agency proceedings, and appeals before the Board or its predecessor agencies, that were subject to judicial review or under

judicial review on January 11, 1979, the date on which the Act became effective. An agency proceeding is considered to exist once the employee has received notice of the proposed action. [5 C.F.R. § 1201.191(b) (1982) ]

*Id.*

The Court cited several cases, including *Nibali,* which interpreted the "savings" provision of the Civil Service Reform Act to be inapplicable to any proceeding subject to judicial review on January 11, 1979. In *Skinner,* the Court held that since plaintiff Skinner received notice of her termination on November 30, 1978 (before January 11, 1979), her claim was subject to judicial review and therefore "pending" before the effective date of the CSRA.

 In the instant case, it is clear that plaintiff's appeal from the DLA's administrative actions between 1975 and 1978 was subject to judicial review on January 11, 1979; plaintiff filed the complaint on February 2, 1978. Since plaintiff's case was indeed "pending" on January 11, 1979, the DLA did not abuse its discretion in denying plaintiff fees; the DLA correctly (according to the MSPB's own interpretation) followed the provisions of 5 U.S.C. § 5596. Therefore, plaintiff is not entitled to attorney fees for work done before the DLA.[10]

priate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—
(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—
(ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processes under a procedure negotiated in accordance with chapter 71 of this title, or under chapter 11 of title I of the Foreign Service Act of 1980, shall be awarded in accordance with standards established under section 7701(g) of this title.
5 U.S.C. § 7701(g) states:
Except as provided in paragraph (2) of the subsection, the Board, or an administrative law

judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

10. Because the Court has found that 5 U.S.C. § 5596's attorney fees provisions are not applicable to plaintiff, it does not reach the issue of whether the DLA decision was an "adversary adjudication." However, the absence of counsel representing the government at the proceedings following the remand suggests that these were not adversary adjudications.

## V.

It is not necessary for the Court to consider plaintiff's entitlement to fees under the Civil Rights Attorney Fees Award Act of 1916, 42 U.S.C. § 1988. Plaintiff is not the "prevailing party" with respect to the race and age discrimination claims. This Court dismissed plaintiff's age and sex discrimination claims in its January 13, 1982 order because plaintiff had failed to exhaust his administrative remedies. Furthermore, following the remand of his case for further administrative proceedings, plaintiff failed to reassert his discrimination claims to either the DLA or the EEOC.

Plaintiff, however, contends that despite not receiving a judicial or administrative judgment in his favor on the age and sex discrimination claims, plaintiff can be found to have "prevailed" because of the nexus between his claims and the relief he received. Plaintiff relies on *Johnston v. Jago*, 691 F.2d 283 (6th Cir.1982) and other fees cases where the litigation ended in settlement. In order to determine who was the "prevailing party," the various appeals courts formulated tests to determine if "[plaintiff's] lawsuit was causally related to securing the relief obtained." *Id.* at 286.

In the instant case, the absence of any record on the relationship between plaintiff's age and sex discrimination claims and his eventual back pay and promotion does not permit any inference that they are linked. Plaintiff repeatedly *asserts* that racial discrimination was the primary factor in the DLA's finding of an "unjustified or unwarranted personnel action." Brief in Support of Motion for Attorney Fees, at 22. However, mere allegations by plaintiff that there was a relation do not satisfy this Court. Since the DLA officer was only examining whether DLA procedures were violated in denying plaintiff his promotion, the motivations for the non-selection and specific violations found are subject to speculation. In any case, the lack of an adequate record leads this court to conclude that plaintiff was not a "prevailing party" under 42 U.S.C. 1988 with respect to the age and sex discrimination claims. Since a party is not entitled to fees for time spent litigating claims upon which it did not prevail, *Copeland v. Marshall,* 641 F.2d 880, 891–92. (D.C.Cir.1980) the plaintiff may not recover these fees.

## VI.

Plaintiff is entitled to recover costs incurred in litigation under 28 U.S.C. § 2412(a) and Federal Rule of Civil Procedure 54(d). Plaintiff is the prevailing party in this action. Plaintiff may recover those costs enumerated in 28 U.S.C. § 1920.

The defendants have not contested plaintiff's entitlement to costs nor overcome their burden of overcoming the presumption that plaintiff is entitled to these costs. *See Popeil Bros. Inc. v. Schick Electric Co.,* 516 F.2d 772, 775 (7th Cir.1975). Plaintiff is entitled to all the costs permitted under 28 U.S.C. § 1920 and the law interpreting that section.

Plaintiff will have thirty days to submit a list itemizing those costs incurred in this action and allowed under 28 U.S.C. § 1920. Plaintiff will also obtain a bill of costs from the Clerk of Courts and attach it to his list.

## VII.

The Supreme Court has stated that "request[s] for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). This advice has not been followed in the instant case. More unfortunate than the number of filings concerning fees and extensions sought by the parties since judgment is the quality of the filings. The briefing in this matter while lengthy has often been little more than photocopied excerpts of cases taken directly from reporters. Cases cited have often not been directly to the point or very useful in resolving this matter. Simply put, the court has had to struggle to find the statutory, administrative and case law citations necessary to resolve this matter. Despite the absence of counsel's efforts to effectively educate the Court, today's opinion represents the Court's attempt to be both correct on the law and fair to the parties.

For the reasons stated above, plaintiff's motion for attorney fees and expenses is denied. Plaintiff is entitled to costs and shall submit the list of costs for the Court's approval within thirty days.

IT IS SO ORDERED.